## Creed *versus* Pennsylvania Railroad Company.

1. The conductor of a railroad train is charged with the administration of the rules of the company for the regulation of those who travel on its cars, and if he permits a passenger to ride in a caboose attached to the train, and an accident occurs through the negligence of the company, whereby the passenger is injured, he may recover damages.

2. No legal presumption of negligence on the part of a passenger arises from the fact of his being in a car, not intended for the use of passengers, when an accident happens.

3. Where one is travelling by a passenger train and is not connected with the railroad company, the legal presumption is that he is a passenger, and travelling for a consideration.

January 21st 1878.    Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas No. 1, of *Philadelphia county :* Of January Term 1877, No. 21.

This was an action on the case for damages, brought by Joanna Creed, widow of Henry B. Creed, deceased, against the Pennsylvania Railroad Company, for the death of the said Henry B. Creed, caused by the alleged negligence of the said company. The accident, by which decedent met his death occurred on November 5th 1874, at Schenck's Station, which is on the road of the said company, about nine miles from the city of Trenton, N. J.

The declaration was in case for negligence, in not safely carrying deceased.    Plea, "Not guilty.

On the trial defendants filed additional pleas, as follows :—

"That they did not contract or agree with H. B. Creed for a valuable consideration, or otherwise, that they would carry the said H. B. Creed from Jersey City, in the state of New Jersey, to the city of Philadelphia, in the state of Pennsylvania, as in the first count of the plaintiff's declaration alleged, and of this the defendants put themselves upon the country, &c.

"And for a further plea, the defendants say that the said H. B. Creed was wrongfully, and in violation of the rules of the company defendants, in a certain car, known as a caboose-car, not adapted to, or intended, or used for the transportation of passengers, but only used for the conveyance of the servants of the defendants, whilst employed in managing and conducting a certain

[Creed *v.* Pennsylvania Railroad Co.]

train of their cars, exclusively used for the transportation of merchandise, which car, or caboose-car, was attached to a train of cars, exclusively used in the transportation of merchandise by them, the defendants, at the time of the alleged injury to the said H. B. Creed, upon the said railroad, &c."

At the trial it appeared that Creed was a passenger on a mixed freight and passenger train of the defendant, running from Jersey City to Philadelphia. At the time of the accident he was in the caboose, the hindmost car of the train, in front of which were the passenger-cars, into which there was ready and easy access. This caboose-car was one set apart and specially designed for the use and occupancy of the employees engaged in running the train, and by the rules of the company no other persons were permitted to enter it.

The cause of the accident was the misplacing, by Brannig, the conductor, of the switch to back his train upon a side track, in order to let the express train pass. The switch had been changed from a ball, or "Wharton" switch, which turns over from the ground, to a stand switch, worked by a lever. The conductor had no notice of the change of switches. After he had turned the new switch wrong, and had gone the length of a rail, he discovered his mistake, ran back to straighten it, struck his foot against a tie and stumbled, got the switch back about half way, when the rear car of the train, which was backing, and in which decedent was sitting, struck the open end of the rail, and, with the three passenger-cars next to it, ran off the track. The caboose-car upset and Creed was instantly killed.

Brannig testified that he saw Creed on the afternoon of the 5th of November in Jersey City. He afterwards observed him at Newark on the train sitting in the lookout of the caboose, and subsequently saw him once or twice, the last time, he thought, at Trenton.

Brannig was the freight conductor, and at the time of the accident had sole charge of the train, the passenger conductor having left the train at Newark. Brannig, however, it appeared, had no authority to take on passengers or to receive fares, and there was nothing to show that Creed had paid his fare to the passenger conductor. Creed himself had formerly been a freight conductor on the road. He was thirty-nine years of age when killed.

The court, Peirce, J., in their general charge, submitted the question of negligence to the jury, but reserved the points whether the decedent was guilty of contributory negligence, and whether he was a passenger, as follows:—

"Secondly, is there any evidence in the case which leads you to believe that there was negligence on the part of the deceased? You have heard the testimony; there is no direct proof of negligence on his part, unless it may be considered in connection with

[Creed v. Pennsylvania Railroad Co.]

the position which he occupied in the cars as riding in the caboose. Negligence is a mixed question of law and fact, it is said; and so far as the law of negligence connected with this case is concerned, as relates to his travelling in that caboose, I reserve that portion of the case for the consideration of the court in banc, leaving the broad question, though, of negligence, both on the part of the company and on the part of the deceased, to your consideration.

" Then the further question has been made, as to whether the decedent was travelling as a passenger on this occasion.　We have no evidence of the payment of money by him; but I think there is a reasonable and fair presumption that if a person not connected with the company travels by a passenger train, presumably he is travelling as a passenger, and for a consideration.　I reserve, however, in the instruction which I give to you as to this presumption of law, the final determination of this question to the court in banc."

The verdict was for the plaintiff for $10,000.

A rule for a new trial, granted at the instance of defendants, was subsequently discharged, and judgment having been moved for by the plaintiff, on the points reserved, the court, without delivering an opinion, entered it for defendants, *non obstante veredicto*.

This entry of judgment was the error assigned by plaintiff, who took this writ.

*Pierce Archer, Jr.*, and *Lewis C. Cassidy*, for plaintiff in error. —Caboose-cars are constantly used by railroad companies, under their rules for the carriage of passengers for hire, and damages may be recovered for injuries sustained while riding therein: Lake Shore and Michigan Southern Railroad Co. v. Greenwood, 29 P. F. Smith 373; Indianapolis, B. and W. Railroad Co. v. Beaver, 41 Indiana 493; Chicago, Burlington and Quincy Railroad Co. v. Hazzard, 26 Ill. 373. If the conductor, in his discretion, permitted the decedent to ride in the caboose, he was rightfully there: O'Donnell v. Allegheny Valley Railroad Co., 9 P. F. Smith 249; Lackawanna and B. Railroad Co. v. Chenewith, 2 Id. 382; Carroll v. New York and New Haven Railroad Co., 1 Duer 571; Wharton's Law of Negligence 354; Redfield on Railways 332; Washburn v. The Nashville and Chattanooga Railroad Co., 3 Head 638; Dunn v. Grand Trunk Railroad Co., 58 Maine 187. The carrier who, instead of expelling a trespasser, permits him to remain in the carriage, enters into a contract of common carriage with him, and he stands, so far as concerns protection from neglect, on the same footing as the ordinary passenger: Wharton's Law of Negligence 354; Wilton v. Middlesex Railroad Co., 107 Mass. 108. Every one riding in a railroad car is presumed prima facie to be there lawfully, as a passenger having paid, or being liable when called on to pay his fare, and the onus is upon the carrier to prove affirm-

[*Creed v.* Pennsylvania Railroad Co.]

atively that he was a trespasser : Pennsylvania Railroad Co. *v.* Books, 7 P. F. Smith 339 ; Canal Co. *v.* Graham, 13 Id. 299 ; Flower *v.* Pennsylvania Railroad Co., 19 Id. 215. There are a number of decisions fixing the liability of carriers to passengers, riding on free passes, for negligence : Pennsylvania Railroad Co. *v.* Butler, 7 P. F. Smith 335 ; Same *v.* Henderson, 1 Id. 315 ; P. and R. Railroad Co. *v.* Derby, 14 How. 468 ; Pitts. Railroad Co. *v.* Caldwell, 24 P. F. Smith 421 ; Wharton's Law of Negligence 501, 641 and note. The case of The Union Railway Co. *v.* Nichols, 8 Kansas 505, relied upon by defendants, has no application to the case at bar, as there the plaintiff practised a deceit and falsely claimed to be an express agent to secure a free ride in the baggage-car, and the court properly held that the fraud barred a recovery. That case, too, has been criticised and condemned as unsound, in an elaborate review of all the cases, in Wharton's Law of Negligence 356, note 3 ; Redfield on Carriers 386.

*Chapman Biddle*, for defendant in error.—The two issues raised by the pleadings are, whether Creed was a passenger by contract or by presumption of law, at the time the accident occurred. As there was no evidence as to the first issue, the case is narrowed to the legal relation which Creed bore to the defendant.

A passenger by presumption of law may be defined to be one who takes his seat openly in a carriage, in the place assigned to passengers generally (Wharton on Negligence, § 354) ; is both ready and willing to pay his fare when called upon (Railroad Co. *v.* Books, 7 P. F. Smith 346), and consents to all the reasonable rules of the company for entering, occupying and leaving their cars : Sullivan *v.* The Reading Railroad Co., 6 Casey 238 ; Railroad Co. *v.* Zebe, 9 Id. 326.

Railway companies are authorized to make all reasonable rules and regulations for the carriage of their passengers : Dietrich *v.* Railroad Co., 21 P. F. Smith 436 ; Long *v.* New York Central Railroad Co., 50 New York 76. In the present instance, by the written order or regulation of the defendants, conductors were prohibited from carrying passengers in a caboose-car, which regulation was, moreover, in contemplation of law, known to Creed.

A person on a freight train is not a passenger, and no act of a conductor of a freight train will bind a company, unless it assents thereto : Eaton *v.* Delaware and Lackawanna Railroad Co., 57 N. Y. 382 ; Lygo *v.* Newbold, 9 Exch. 302. The case of the Lake Shore and Michigan Southern Railroad Co. is distinguishable from this case, as there the only coach provided on the way freight was the caboose ; but here there were passenger-cars, and the use of the caboose by passengers was forbidden by the rules of the company. Creed, therefore, was clearly not a passenger by presumption of law ; so that his status or relation to the company must have been

[Creed v. Pennsylvania Railroad Co.]

either that of a trespasser or of an interloper.  But in neither would he have been entitled to recover from the company in case of injury : Robertson v. New York and Erie Railroad Co., 22 Barb. 91 ; Union Pacific Railroad Co. v. Nichols, 8 Kansas 505.

Mr. Justice GORDON delivered the opinion of the court, February 11th 1878.

From the evidence it appears that Henry Creed, the husband of the plaintiff, from the death of whom the present action has resulted, was a passenger upon a mixed freight and passenger train of the defendant, running from Jersey City to Philadelphia.  At the time of the accident, which resulted in his death, Creed was in the caboose, the hindmost car of the train, immediately in front of which were the passenger-cars, so that there was ready and easy access from the latter to the former.  This caboose-car was one set apart and especially designed for the use and occupancy of the employees engaged in running the train, and by the rules of the company no other persons were permitted to enter it.  It is quite clear, from the evidence, that Creed boarded this train at Jersey City, for Brannig, the freight conductor, says he saw him first on the afternoon of November 5th, the day of the accident, in that city, and that he next noticed him at Newark in the lookout of the caboose, and as this train left Jersey City in the evening, there can be but little doubt that the deceased got upon it at that point.  It is also in evidence, that though Brannig had the full and entire charge of the train from the time it left Newark, yet he had no authority to receive passengers or to examine or lift the tickets of such as remained on the train after passing that station, at which point the passenger conductor, who had charge of the cars from Jersey City, left the train.  Whether Creed paid his fare or not is unknown. Brannig's duties did not lead him to inquire, and the passenger conductor was not called.  He may have had a ticket, or he may have been surreptitiously on the train through the connivance of the train hands, to whom he may have been known, as he formerly had a position on this road.  Presumptively he was rightfully there ; certainly he was there with the knowledge and acquiescence of one of the conductors, if not of both.  Under this condition of affairs the learned judge of the court below charged the jury as follows :

"1. There is no direct proof of negligence on his, Creed's, part, unless it may be considered in connection with the position which he occupied in the cars as riding in the caboose."  This point was reserved.

" 2. We have no evidence of payment of money by him ; but I think there is a reasonable and fair presumption, that if a person, not connected with the company, travels by a passenger train, presumably he is travelling as a passenger and for a consideration." This point was also reserved.  The verdict was for the plaintiff ;

[Creed *v.* Pennsylvania Railroad Co.]

but the court, without giving any opinion, entered judgment for the defendant *non obstante veredicto.* It follows, that the converse, of one or both of the above propositions, was finally held by the court. That is to say; first, that there was a legal presumption of negligence, on the part of Creed, arising from the fact of his being in a car, when the accident happened, not intended for the use of passengers; second, that, although travelling by a passenger train, and not connected with the company, the legal presumption is that he was not travelling as a passenger who had paid his fare, or intended, in good faith, so to do. As legal propositions these cannot be sustained.

No presumption of negligence can arise, either in fact or in law, from the fact of Creed's occupancy of the caboose, for there is no evidence that it was in any degree more unsafe than any other car in the train. It was, indeed, under all ordinary circumstances, the one that was the most safe; from collisions in front of the train it was protected by the cars which preceded it, and from dangers behind, being itself a lookout, it was guarded by the constant vigilance of the employees. That it proved to be the car first in danger, and the one most badly wrecked, argues nothing, since the carelessness of the company, in introducing new switches, having an action the reverse of the old ones, without notice to those in charge of its trains, could not be foreseen by any one, however prudent. Was Creed's position, under all ordinary circumstances, which a man of ordinary prudence ought to foresee and guard against, as safe as a seat in a passenger car? If it was, and, as we have said, there is no evidence to the contrary, then negligence cannot be predicated of the fact of his being in the caboose. It is true, however, that Creed, as a passenger, ought not to have been in that car; not, indeed, because it was less safe than other parts of the train, but because forbidden by the rules of the company. It was a car provided for the use of the train hands, and not for passengers, and from its very shape and character that fact must have been obvious to any one of common understanding and observation; much more to the deceased, who had himself been a freight conductor upon this very road. Presuming, then, the knowledge of the design of this car by the deceased, which, however, is a presumption of fact, not of law, was the company thereby released as to Creed from its duty as a common carrier? This point was raised and determined in O'Donnell *v.* The Alleghany Valley Railroad Co., 9 P. F. Smith 239; in which case the court below held that the baggage-car was an improper place for passengers, whether the rule of the company against such use was communicated to them or not, and that one leaving his seat in the passenger-coach and entering the baggage-car was guilty of negligence. But this ruling was reversed. Mr. Justice AGNEW delivering the opinion of the court, observed: That whilst it is the

undoubted right of a railroad company to prescribe reasonable rules for the regulation of those who travel on its cars, yet the conductor is the one who is charged with their administration, and his permission of, or acquiescence in, the use of the baggage-car by a passenger, exempts such passenger from all blame, and in case of accident to him, resulting from the negligence of the company, he may recover damages. In the case of the Lackawanna and Bloomsburg Railroad Co. v. Chenewith, 2 P. F. Smith 382, the plaintiff had obtained permission from the agents of the company to attach his freight-car to a passenger train, contrary to the rules of the company, which were communicated to him, he at the same time agreeing "to run all risks." Notwithstanding this, it was. held that the company was liable for damages resulting to the plaintiff and his car from negligence in the running of the train. And this is reasonable; for, as was said in that case, the plaintiff's car was not unlawfully upon the road, and his engagement to be responsible for all risks did not embrace such as arose from the neglect of the defendant's employees.

The test for contributory negligence is found in the affirmative of the question, does that negligence contribute in any degree to the production of the injury complained of? If it does, there can be no recovery; if it does not, it is not to be considered. In this we are also supported by the case of Carroll v. The New York and New Haven Railroad Co., 1 Duer, opinion per Bosworth, J. At the time of the accident complained of, the plaintiff, a passenger, was in the post-office part of the baggage-car, and though it was. conceded that the position was more dangerous in case of collision than a seat in the passenger-car, yet, being injured by a collision to which his position in no way contributed, it was held he was entitled to recover. So, it was pertinently asked by Mr. Justice Thompson, in the case of the Railroad Co. v. Chenewith,. above cited, "Why speculate about the supposed dangerous position assumed by the plaintiff if no damage resulted from it? Was he to become an outlaw for assuming what proved to be no risk, and so forfeit his right when he was blameless?"

This doctrine applies with much force to the case in hand. Creed was in the caboose with the knowledge and assent of the freight conductor, if we may believe the testimony of that officer; hence, he was not a trespasser; and suppose, knowing that this was not a proper place for passengers, he assumed all risks incident to that car by boarding it; what then? Was a carelessly located or misplaced switch such an incident? Or did his position in the remotest degree contribute to the accident? If, however, it did not, why talk about the matter as though it were of importance? This doctrine is further illustrated by the case of Washburn v. The Nashville and Chattanooga Railroad Co., 3 Head (Tenn.) 638, wherein it was held, that the fact that one is riding in the baggage-car, with

the knowledge of the conductor, or is riding free, will not preclude him from a recovery for an injury arising from a collision, even though he might, or would not, have been injured had he remained in the passenger-car. A like decision was made by the Supreme Court of Minnesota, in the case of Jacobus *v.* The St. Paul and Chicago Railroad Co., Leg. Intel. 1874, p. 277, holding that the fact that the passenger, at the time of the injury, was in the baggage-car, contrary to a rule of the company, was not such contributory negligence as would bar his suit, and this though he may have been informed of the rule and may have persisted in remaining there in violation of it, if his position did not contribute to the accident which caused the injury. It is manifest, therefore, from reason and authority, that there was nothing in the first point for the court to reserve, but, having instructed the jury that there was no evidence of contributory negligence on part of Creed, the matter should have been allowed so to stand.

As to the second point, it was certainly correct to say " that if a person, not connected with the company, travels by a passenger train, presumably he is travelling as a passenger, and for a consideration;" in other words, he is presumed to have paid his fare or to be ready to pay it when called upon. To presume otherwise would be to presume that such an one was a trespasser; but this is an affirmative proposition, the proof of which rests upon the one alleging it. As the doctrine above stated is expressly ruled in the case of the Pennsylvania Railroad *v.* Books, 7 P. F. Smith 339, per SHARSWOOD, J., we need pursue this subject no further. The position occupied by the decedent, in the caboose-car, may raise a question for the jury. Creed was upon a passenger-train, and, as we have seen, might lawfully occupy any part of that train, whether passenger-car or caboose, if the conductor, knowing his position, did not object to it. It follows that all presumptions favorable to the occupant of a passenger-car attach in like manner to him though occupying the caboose. It cannot be said that it was no part of the duty of the passenger conductor to visit this caboose, and that, hence, no presumption can arise that Creed paid fare to an officer whom he did not see and who did not see him, for as it is the conductor's duty to visit every part of his train where passengers may lawfully be, we must presume he did his duty. Whilst this is so it does not follow, from the facts developed in this case, that a presumption *de jure* arises that Creed did pay his fare, or that he may not have been a trespasser. That he did not pay his fare to Brannig, the freight conductor, counts for nothing, for he was not authorized to receive it. This fact, however, does prove that if he paid at all it must have been at Jersey City, at Newark, or between those places whilst the train was in charge of the passenger conductor, and as he was first noticed by Brannig, at Newark, in the lookout part of the caboose, and as he may have occupied

[Creed v. Pennsylvania Railroad Co.]

that position from Jersey City, it is quite possible, or even probable, that he may not have been seen by the passenger conductor, or if seen by that officer, may have been mistaken for one of the train hands and so have avoided the payment of fare.

There being this in the case, which ought to be passed upon by a jury, we send it back for re-trial instead of entering judgment on the verdict.

Judgment reversed, and a *venire facias de novo* awarded.

SHARSWOOD and MERCUR, JJ., dissented.