CITIZENS PASS. RY. CO. v. MARY E. KETCHAM.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued January 24, 1888—Decided October 29, 1888.

1. When, in an action for negligence, submissible evidence has been adduced that the act causing the injury was the act of persons other than the defendant, it is error so to charge the jury that the relative liabilities of the persons, who under the evidence may be found responsible for the act, are left unexplained.

2. It is the right of a street car company, in Philadelphia, bound by its charter to keep in repair the streets occupied by it, to show that a defect in a street, causing an injury, was the result of the negligence of persons other than themselves; and to require of the court to charge distinctly that if they so find the facts, their verdict should be for the defendant.

3. To a point that, "If the jury believe that the injury was occasioned by the negligence of the plumber who was engaged in putting in pipes under license from the city, there can be no recovery from the railway company," the answer was, "I affirm that point; but if, after his negligence ceased to operate, the railway company are negligent, they may be answerable:" Held, that the point should have been affirmed without the qualification.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and CLARK, JJ.; TRUNKEY and WILLIAMS, JJ., absent.

No. 170 July Term 1887, Sup. Ct.; court below, No. 179 September Term 1885, C. P. No. 2.

On October 28, 1885, a summons in case was issued by Mary E. Ketcham, who sued in behalf of herself as widow, and of Laura Ketcham, the only child of George H. Ketcham, against The Citizens Passenger Railway Company, to recover damages for injuries resulting in the death of the husband through the alleged negligence of the defendant company.

At the trial on January 21, 1887, the facts appearing were as follows:

The defendant company operates a passenger railway running north on Eleventh street and south on Tenth street. The act of March 25, 1858, P. L. 168, incorporating the company provides:

Section 8. The said company, in constructing said road, shall conform to the grades now established, or hereafter to be by law established, of the several streets and avenues traversed by said road, and keep said streets and avenues in perpetual good repair at the proper expense of said company.

Portions of certain city ordinances are as follows:

Section 3. All railroad companies as aforesaid, shall be at the entire cost and expense of maintaining, paving, repairing and repaving that may be necessary upon any road, street, avenue or alley occupied by them. . . . . Ordinance, July 7, 1857.

Section 3. Whenever it shall be found necessary for the city of Philadelphia to occupy all or any portion of any street or highway, whereupon a passenger railroad now is, or hereafter may be constructed, for the purpose of making improvements thereon, such as culverts, laying of water or gas pipes, or any other alteration or improvement that may from time to time be found necessary, the said city shall have full and entire power and authority to make such alteration or improvement without recourse on the part of any railroad company against the said city, for any obstruction or embarrassment the said railroad company may meet with, consequent upon such alteration or improvement. . . . . Ordinance, April 1, 1859.

Ordinances of October 5, 1863, April 26, 1873, and May 6, 1876, were also given in evidence; also the ordinance of June 27, 1883, a portion of which is as follows:

Statement of Facts.

Section 1. That from and after the passage of this ordinance, all parties opening the streets of Philadelphia, for the purpose of making connections with the sewers, gas, or water pipes, or for laying gas or water pipes, sewers, drains, conduits, or for any other purpose, shall, immediately upon the completion of the work, have the opening or trench filled and thoroughly compacted by ramming in horizontal layers, not exceeding one foot in thickness ; and if the street be paved or macadamized, at once re-paved or re-macadamized, using the requisite kind and amount of material therefor. . . . .

In the summer of 1885 a row of new houses was built on the east side of Tenth street, and it was necessary to connect them with the city sewer, the water main and the gas main. Permits to make these connections were obtained from the city, and in May, 1885, connection was made with the sewer which lies under the east rail of the defendant's road-way. The connection with the water main lying west of the track was made in August. These connections were made by plumbers engaged on the houses. The gas connections were made by the city officials some days after the connections were made with the water main. On September 5, 1885, the trench, which had been opened to make these connections, had been filled up with earth but not fully re-paved. On the east side of the track, the earth had been rounded up, and the stones thrown loosely upon the top. The testimony was conflicting whether the street on the west side of the track had been restored to good condition ; but, extending across between the rails of the company's track, there was a depression the depth of the cobble stones, and two or three feet wide, where the pavement had not been restored. There was some conflict in the testimony as to who or what had caused the removal of the cobble pavement between the rails of the track.

On the afternoon of the day mentioned, George H. Ketcham, who was the foreman for the Commercial Ice Company, was driving a two-horse ice-wagon down Tenth street, as a substitute for the regular driver, who was off duty. It was his first trip. The team was traveling at about the gait of the ordinary horse-car, and when it reached the depression between the rails the horses shied, and the front wheels of the wagon slipped off the rails into the depression, the shock causing Mr. Ketcham to

Charge of Court below.

fall from his seat to the ground on the right side of the wagon. The wheels passed over him, whereby he received such injuries that he died the same day.

The court, HARE, P. J., charged the jury and answered the defendant's points as follows :

[The defendant contends that the accident was due to the neglect of the builders of the houses, who tore up the street for the purpose of putting in gas and water, and consequently that it is not answerable in point of law and I should so instruct the jury.  It seems to me that the defendant has taken away that portion of the defence by evidence that the excavation made by the builders was filled up on the west side of the street, and the street left in good order by them, with the exception of the east side, and if this is so, and the accident was due to the condition of the west side of the street, arising from the subsequent use of the street for traffic, the principle contended for by defendant does not apply.] [1]

The following points are presented on the part of the defendant :

1. A street railway company is not liable for damages resulting from the digging of a trench in the public streets, under a license from the corporate authority, for the purpose of making a connection with the main conduit pipe for distributing water to the inhabitants, and from the same not being properly filled up.

Answer: The defendants are not answerable for the injury arising from the digging of such a trench, nor from the failure to fill it up or re-pave, so long as the work remains in the hands of the contractors, but if after they have restored the street to its ordinary condition it becomes out of repair by subsequent use and the defendants are negligent in not repairing it and an injury follows, they may be answerable.[2]

2. Where excavations are made for private benefit, and are done at private expense, only the persons who made them or caused them to be made are answerable for any injury that may be occasioned.

Answer: This is covered by my answers to the first point.[3]

3. If the jury believe that the injury was occasioned by the negligence of the plumber who was engaged in putting in pipes

under license from the city of Philadelphia, there can be no recovery from the railway company.

Answer: I affirm that point; but if, after his negligence ceased to operate, the railway company are negligent, they may be answerable.[4]

5. The uncontradicted evidence in this case being that the holes in the street were caused by persons engaged in the erection of a row of houses on the east side of Tenth street, the railway company was not liable for any accident caused thereby, and your verdict should be in their favor.

Answer: I decline this point.[5]

6. If the driver of the ice wagon contributed to the injury by driving his wagon at a canter along this street, there can be no recovery in this action.

Answer: I decline to affirm that point. It would depend on how fast the canter was. If it was too fast for prudence in view of the circumstances, then I affirm the proposition. Whether it was too fast in view of the circumstances is for the jury.[6]

7. On the whole evidence in this case the verdict should be for the defendant.

Answer: I decline to affirm this point.[7]

The verdict of the jury was for the plaintiff for $10,000. A rule for a new trial was subsequently discharged and judgment entered, when the defendant took this writ, assigning as error:

1. The charge of the court embraced in [ ][1]
2–7. The answers to the defendant's points.[2 to 7]

*Mr. John H. Sloan* and *Mr. F. Carroll Brewster*, for the plaintiff in error:

It will be seen from the charter of the railway company and the city ordinances relating to street railways, that the companies are bound to keep in repair the streets upon which their tracks are laid. But the fair construction of the charter and of the ordinances is, that the companies are required to keep the streets in such repair as is made necessary by travel upon them; not to fill up and keep filled up all the holes made in the streets by every person for every purpose. Indeed, by the ordinances themselves, particularly that of June 27, 1883, it is expressly

made the duty of those who obtain permits from the city to open the streets, to fill the openings and replace the pavement in good condition. The law of this case is clear.

1. The railway company was under no duty to supervise this trench; nor was it responsible for the negligence of the plumbers or of the city gas men. A trench dug by the license of the municipal authorities is not a nuisance per se: Smith v. Simmons, 103 Pa. 32; nor are the municipal authorities responsible for the negligence of the licensee: Susquehanna v. Simmons, 112 Pa. 384; West Chester v. Apple, 35 Pa. 284; and the liability of the railway company, under the ordinances and its charter, is of no greater kind or extent than the liability of the municipality: Philadelphia v. Weller, 4 Brewst. 24; the persons who caused the defects are liable for the injuries: Wharton on Negligence, § 815 et seq.

2. The case should have been submitted to the jury upon instructions applicable to the evidence, and not to a state of facts which the evidence did not tend to establish: Stall v. Meek, 70 Pa. 181. A charge, correct in the abstract, but erroneous as applied to the evidence and liable to mislead the jury, is ground for reversal: Penn. R. Co. v. Berry, 68 Pa. 272; D. & H. Canal Co. v. Torrey, 33 Pa. 143; Bisbing v. Third N. Bank, 93 Pa. 79; Fawcett v. Fawcett, 95 Pa. 376.

3. If the driver of the ice wagon contributed to the injury by driving at a canter, there can be no recovery. It was a clear day, and the street was full of warnings; the horses observed the danger; the driver was bound to avoid it: Erie City v. Magill, 101 Pa. 616; P. S. Ry. Co. v. Taylor, 104 Pa. 306; Monongahela City v. Fischer, 111 Pa. 9; Leh. V. R. Co. v. Greiner, 113 Pa. 600; Crescent Tp. v. Anderson, 114 Pa. 643. "It is much better when a point can be affirmed, to say so. When affirmed with a qualification, or in language different from the point itself, it is very apt to mislead the jury:" Lancaster v. Kissinger, 11 W. N. 151.

*Mr. Wm. W. Wiltbank* (with him *Mr. James Crowe*), for the defendant in error:

The defendant below made two main points of defence: First, that the holes, gullies, ruts, etc., etc., had been caused by plumbers; and, second, that after these had finished their work,

the defendant had·had the street thoroughly repaired. Thus the court was required to answer the points as it did. The entire contention was, that the street had been put in good order by the railway company. This was urged in every way. It was not admitted for a moment that the work of the builders and plumbers had been suffered to stand; they had made holes, etc., but the company had repaired them. Hence, when the court was asked to throw the responsibility on the workmen, and to relieve the corporation, the comment was necessary, in justice to the plaintiff below and to the jury, that it seemed the defendant had taken away that defence by contending that the roadway had later been repaired; and that accordingly the holes and other defects that caused the accident, if any there were, may have been due to bad repair later, to neglect of the roadway, or to use, after the time of the defendant's work there. The defendant was inconsistent. It had urged that it had completely repaired the wrong-doing of the workmen, and that, accordingly, there were no holes, etc., only later to ask the judge to charge that the accident was due to the very ills it had remedied.

OPINION, MR. JUSTICE GREEN:

On the trial of this case the plaintiff gave evidence to show that there was a depression of about eight inches in depth in the surface of the ground between the rails of the defendant's track, extending all the way across, between the rails, and from two to three feet in width. She further gave evidence to prove that her husband while driving an ice wagon on the defendant's track, was thrown from the wagon under its wheels and killed in consequence of a jolt sustained by the wagon by the front wheels, or one of them, dropping into the depression of the surface above described. And it was claimed and was essential to any right of recovery to prove, that the defendant was responsible for the depression in the surface of its track and was guilty of negligence for not repairing it, and that this negligence was the occasion of the death of the plaintiff's husband. There was abundance of testimony to prove that there was such a defect in the track of the road; and the evidence as to the manner of the accident, while somewhat meagre, was yet quite sufficient to support the theory that one of the wheels of the

wagon did drop into the hole and cause the jolt which threw the deceased under the wheels of the wagon.

Upon the foregoing statement of the facts, the terms of the liability of the defendant were sufficiently established to justify a verdict against the company if there were nothing else in the case to lead to a different conclusion. It was abundantly proved on the trial by the witnesses, both of the plaintiff and the defendant, that trenches had been dug in the street at the place of the accident, but some time before, by plumbers, who were putting in gas, water, and sewer pipes to connect a block of new houses on the east side of the street with the street mains lying underneath the surface of the street in front of the houses. There was no dispute as to this fact and the question as to the defendant's liability depended upon whether: (1) the hole or depression where the accident occurred was occasioned by the act of the defendant or by its negligence in not repairing, or (2) whether it was occasioned by the plumbers in the employ of either the city or private persons in digging trenches and laying the connecting pipes. The defendant contended that it had nothing to do with making the hole or depression in the surface at the place of the accident, but that it was the result exclusively of the operations of the plumbers employed by the city or private persons and therefore that the defendant was not liable.

The charter of the defendant and the city ordinances were given in evidence defining the duty of the former to keep the streets repaired and defining the obligations both of the city and of private persons in respect to the opening of the streets and closing them in laying gas, water, and sewer pipes.

It was not contested on the argument, and the learned court below charged, that if the defect in the highway in question was caused by the city or by private persons in laying pipes, and that they were guilty of negligence in not repairing, the defendant was not liable. In order then that the case should be properly presented to the jury, it should have been explained to them that if the defect which caused the accident was caused by the neglect of the defendant in permitting the track to get out of repair and not amending it, the defendant was liable if the accident was the result of the want of repair, but if the defect was the work of the city or private persons who were

bound to repair, but neglected to do so, the defendant was not liable, and the verdict should be for the defendant. It was certainly the right of the defendant to show that the injury in question was the result of the negligence of persons other than themselves, and to require of the court to charge the jury distinctly that if they so found the facts, their verdict should be for the defendant.

Having this situation of the case in view we find that the whole body of the charge, so far as appears on this record, is contained in the following twelve printed lines : " The defendant contends that the accident was due to the neglect of the builders of the houses who tore up the street for the purpose of putting in gas and water, and, consequently, that it is not answerable in point of law, and I should so instruct the jury. It seems to me that the defendant has taken away that portion of the defence by evidence that the excavation made by the builders was filled up on the west side of the street, and the street left in good order by them, with the exception of the east side; and if this is so, and the accident was due to the condition of the west side of the street, arising from the subsequent use of the street for traffic, the principle contended for by the defendant does not apply."

We cannot consider this an adequate presentation of the controversy to the jury. It contains no statement of what the conflicting questions of fact are upon which the decision of the case must turn. Nor does it explain the relative liabilities of the various parties who, under the testimony, may be found to have occasioned the defect in the highway, and, without such explanation the jury would be without guide or chart in their endeavors to ascertain upon whom the responsibility for the injury rested. But, in addition to this, the charge takes away from the defendant the right to have the jury even consider the most conspicuous defence which, under the testimony, the defendant could set up against the plaintiff's claim. The jury is told that the defence that the accident was due to the neglect of the builders of the houses was taken away by giving evidence that the excavation made by the builders was filled up on the west side of the street, and the street left in good order by them, with the exception of the east side. But how can this be so? Whether the builders or the defendant filled

up the street on the west side of the track, and left it in good order, certainly cannot affect the question as to the responsibility for the hole between the rails. If that hole remained and caused the injury, it matters not that all the rest of the street on both sides was filled up in the most perfect condition. The question still remains, who caused the hole between the rails, and was that the cause of the injury? But, under the charge, the jury could not consider that question.

The mere withdrawal of this question from the jury was error, but there was further error in saying to the jury that if the accident was due to the condition of the west side of the street, arising from the subsequent use of the street for traffic, the principle contended for by the defendant does not apply. The reason of this last error is, that there was no evidence to sustain it. We cannot find in the testimony of any witness the statement that the accident was due to the condition of the west side of the street in any manner, or that there was any defect therein arising from subsequent use of the street for traffic, or at all. It is true that Donaghy says the front wheels went off on the west side, but he evidently means the west side of the track, and that the hole that was there had been put there for the purpose of putting pipes in the new buildings, and cobble-stones had been thrown on, so that whatever hole there was there it was not occasioned by the subsequent use of the street, but was the remnant of the previous excavation. But even if the defendant gave evidence to prove that all the holes, both on the west and east sides and in the middle of the track, had been filled, and the whole street had been put in good repair, yet this would only have produced a conflicting state of the testimony, inasmuch as the plaintiff's testimony to the contrary still remained, and then it was for the jury to decide which evidence they believed, and if they believed that the hole between the rails was not repaired, but remained as the plumbers had left, or only partially filled it, still the defendant would not be liable. But all this was taken from the jury, both in the general charge and in the answers to the points.

The first point of the defendant was an abstract proposition, pertinent to the case, yet not mingled with its facts, and not demanding any conclusion of fact, and it should have been affirmed as it stood, without qualification. The same is true of

the answer to the second point. The answer to the third point was still more erroneous. The point was in the following words: "If the jury believe that the injury was occasioned by the negligence of the plumber, who was engaged in putting in pipes under license from the city of Philadelphia, there can be no recovery from the railway company." Most certainly this point was sound, and should have been affirmed just as it stood. Because the proposition of the point was that if the negligence of the plumber *occasioned* the injury there could be no recovery from the defendant, and if that negligence caused the injury it could not have been caused by the negligence of the defendant. Yet the answer was, "I affirm that point; but, if after his negligence ceased to operate, the railway company are negligent, they may be answerable." This answer is both confusing and contradictory. Ostensibly it is an affirmance, but really it is a denial. The error of the learned court consisted in not observing carefully the language and true meaning of the point. The hypothesis of the point was that the injury, that is, the injury for which this action was brought, was actually caused or produced by the negligence of the plumber, and that being so the conclusion was that the defendant was not liable. Of course this was necessarily correct. But the court said, if after his negligence had ceased to operate the railway company was negligent, it would be answerable, forgetting that if the injury occurred after the negligence of the plumber had ceased to operate, the injury could not have been caused by the plumber's negligence at all. Yet this was the very cause assumed in the point, and it was the legal truth of the conclusion from the assumed fact that was for the court to determine, which they did, not by denying the correctness of the conclusion of law upon the assumed fact, but by denying the assumed fact, or rather by substituting another assumed fact in its place, to wit, that the defendant's negligence caused the injury. Of course that conclusion was correct, but that was not the condition upon which the point was put, and upon which the defendant had a clear right to have a distinct and unequivocal answer.

On the first four assignments of error, the judgment must be reversed. The remaining assignments are not sustained as they involve controverted questions of fact which are for the jury.

Judgment reversed, and new venire awarded.