# Behrens, Appellant, *v.* Mountz.

*Trial—Improper remark of counsel—Continuance—Discretion of court —Review.*

The appellate court will not review the discretion of a trial judge in refusing to withdraw a juror and continue the case on account of an improper remark of counsel, where it appears that such remark was at once withdrawn upon objection, and that the court instructed the jury that they must not regard it.

*Evidence—Contemporary writings—Notice to produce—Admission of writing in evidence.*

Where two notices to quit possession are contemporary writings, the counterparts of each other, one of which was delivered and the other preserved, they may both be considered as originals and the one which was preserved may be received in evidence without notice to produce the one which was delivered.

*Trespass—Eviction—Illegal eviction—Possessory action.*

Where an unlawful eviction is effected under the form of a possessory action, the person who makes complaint is liable in damages for the trespass, although he may have instituted the proceeding at the instance of another person.

*Trespass—Unlawful eviction—Evidence—Matter immaterial to the issue.*

In an action of trespass to recover damages for an illegal eviction, it is error to admit letters indicating a willingness upon the part of the plaintiff to move out if she were paid a sufficient sum to recompense her for so doing, but in no way indicating that she did not assert that she had the right to remain.

In such a case if the plaintiff denies having written the letters, it is not competent for the defendant to produce evidence contradicting her on that immaterial matter, and if such evidence is admitted it is error for the court to charge the jury that if they found that the plaintiff willfully perjured herself by the denial of the letters, then this would properly tend to discredit her claim and justify the conclusion that her testimony should be disregarded.

*Trial—Charge—Points.*

Where facts set forth in a point are undisputed, and the opposite party has admitted them to be true in his testimony, the party presenting the points is entitled to an unqualified affirmance of the legal con-

clusions arising from the facts stated in the points, and for the court to qualify the affirmance, is error.

*Decedents' estates—Orphans' court sale—Passing of title—Confirmation of title—Deed.*

The confirmation of an administrator's sale by the orphans' court, does not divest the title of the heirs of the decedent. Such title is only divested when the deed is actually delivered to the purchaser.

*Execution—Possessory proceeding—Act of April 9, 1849, P. L. 524.*

A proceeding to obtain possession under the Act of April 9, 1849, P. L. 524, instituted before a single justice of the peace is void for want of jurisdiction.

*Trespass—Wrongful eviction—Damages.*

Where a purchaser at an administrator's sale, before a deed is delivered to him, institutes possessory proceedings under the Act of April 9, 1849, P. L. 524, before a single justice of the peace, and causes an heir of the decedent in possession to be evicted, he is guilty of an unlawful eviction, and is answerable for the consequences of his fault which are natural and probable, and such as reasonable forecast and prudence might have foreseen. If in such a case there were crops on the land either ready for present use, or which ripened before the title passed to the purchaser, the person evicted is entitled to recover the value thereof; and if the furniture of the person evicted is thrown out of the house while it was raining, or when the weather conditions were such as to indicate rain, and the furniture was actually injured by the rain, the owner is entitled to damages for such injury.

Argued March 9, 1908. Appeal, No. 19, March T., 1908, by plaintiff, from judgment of C. P. Cumberland Co., Feb. T., 1906, No. 210, on verdict for plaintiff in case of Frederick Behrens and Elizabeth J. Behrens, his wife, v. Jacob J. Mountz. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for wrongful eviction. Before SADLER, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial when the plaintiff was under examination, the attorney for the defendant called the witness a liar. Plaintiff's attorney thereupon petitioned the court to withdraw a juror and continue the case.

Mr. Berg: I would like to withdraw any remark that I may

have made inadvertently. The remark was made hastily and inadvertently; it was made to the witness, and I feel positive that the jury did not hear it.

The Court: The remark made by Mr. Berg was not made to the jury, as we understood it; nor with any intent on his part to address the jury; in any event, we instruct the jury if they did hear the remark, they must not regard it. Mr. Berg has explained that what he said was done in haste and with inadvertence. The motion to withdraw a juror is refused; to this, the plaintiff excepts and the bill is sealed. [1]

Mr. Berg: We offer papers identified J. E. Q. Nos. 2 and 3 in evidence, being notices to quit.

Mr. Biddle: Objected to; it having been stated that the papers in question are merely copies of the alleged notices, and the nonproduction of the originals not having been accounted for, the copies are incompetent for any purpose in this case.

The Court: The originals, if any, being in the hands of the plaintiff, the offer is received, notwithstanding the objections of the plaintiff; the plaintiff excepts and the bill is sealed. [2]

J. B. Martin, J. P., was asked this question:

Mr. Berg: "Q. Who came with Mountz when this complaint was made?"

Mr. Biddle: Objected to as immaterial.

Mr. Berg: The purpose is to show that while Jacob J. Mountz appears as complainant in the case, that it was done at the request and for John Nunemaker. The justice not having the complaint here, the next best thing would be to show this by the justice of the peace, if he remembers.

Mr. Biddle: We object; the record itself has been offered in evidence, and that is the best and only evidence of what took place there; that the witness cannot impeach his own record or alter or vary it in any manner; that the proposed evidence is incompetent, irrelevant and immaterial.

Mr. Berg: "Q. Can you find the complaint? A. I might if I looked for it. Q. Were you not subpœnaed to produce all papers? A. Yes."

The Court: You may show that this proceeding was instituted at the instance of the administrator, in support of what Mountz

had said; to this ruling the plaintiff excepts and the bill is sealed. [3]

Mr. Berg: "Q. Did Mr. Mountz make the complaint for himself, or was it at the instance of Mr. Nunemaker? A. It was at the instance of Mr. Nunemaker."

Mr. Berg: We offer in evidence letters J. E. Q. Nos. 4, 5 and 6 for the purpose of showing that Mrs. Behrens did not claim to be the owner of the property, but was only endeavoring to receive money from the administrator.

Mr. Biddle: Objected to, that the proposed evidence will not show what it is offered for, and that it is not competent in any aspect of the present case.

Mr. Berg: They are also offered for the purpose of contradicting Mrs. Behrens when she denied her signatures.

Mr. Biddle: We object further that the notes cannot be used in evidence to affect any rights or claims of·Frederick Behrens, one of the plaintiffs, and the husband of the alleged writer of the letters.

The Court: The letters are admitted for the purpose of contradicting Mrs. Behrens, and for the purpose of showing that at the time she did not claim title to the property by reason of any conveyance to her; to this plaintiff excepts and the bill is sealed. [4]

Mr. Berg reads letters Nos. 4, 5 and 6 to the jury.

" (Copy No. 4.)
"WEST HILL, CUMB. CO., PA.
" Mar. 26th, 1901.
"MR. GEO. E. MILLS,
" Dear Sir:
"I received your letter yesterday, and in reply will say that if you can give me $100.00, I will move away. I don't want to rent. I had bought a house and the man said we must pay $100.00 on it before we can move in, and I will not move twice, as it costs enough to move once; please come out this afternoon and bring me the money yourself. I will allow you $5.00 for your trouble, as Mr. Behrens will not be at home he went over to Mooredale to see the man about the house, and I don't care

to send any one in, and I cannot come myself, and if you come yourself, everything can be made plain; hoping to see you, I remain,

"Very Respectfully,

"MRS FREDERICK BEHRENS."

" (Copy No. 5.)

"GREIDER, CUMB. CO., PA.

"Jan. 14, 1901.

"MR. GEO. E. MILLS,

" Dear Sir:

"As I have been told that you intend to have this affair of ours settled soon. I wish to inform you that when you are ready I want you to send me word, and if you are to do the settling up I don't see any use in having more hands in this affair than what is necessary therefore I wish you to distinctly understand now that you don't offer to give my share of money into any one elses hands but my own. I will pay out of my hands what is to be paid out afterwards, but here is one thing I will say that I will not settle unless Mary is agreed to let Fred have $50.00 Dollars ahead of us heirs for what labor he has done on this property for these last two years. I will stay right where I am if he does not get even that much for what was done here. I want you to speak to her about it. Mr. Mills I hope you will try to do what is right on all sides; leaving the matter to you now, I remain,

"Very Respectfully,

" MRS. FREDERICK BEHRENS.

"P. S.—If I send a written order with my husband, you can give him my money, if I should happen not to come for it myself."

" (Copy No. 6.)

"WEST HILL, CUMB. CO., PA.

"March 25, 1901.

"MR. GEO. E. MILLS,

" Dear Sir:

"I write you this letter concerning those letters you have

been sending out here to Mr. Behrens. I will kindly ask you now don't send any more to him, you or Mr. Mountz cannot hold him for unlawful detainer of the premises, I am the one that is holding possession here not he, he is doing my work, and he has right to stay with me, it is not his fault that the place is not vacated. I gave you fair warning to hand over my money long ago—then I would have been gone; do you think I am going to leave here without having my interest paid over to me. I never will, and the time is close at hand that I will be unable to go any where for quite a while, so you cannot blame me for not moving even now; if I am compelled to move when I am not able some one will have to bear the consequences if something bad should occur. I wish you could arrange matters with Mr. Mountz.

"Very respectfully,

"MRS. FREDERICK BEHRENS."

Plaintiff presented this point:

4. The plaintiffs having been ousted from the premises which they occupied, through the participation of the defendant, and for the purpose of giving him possession thereof, which possession was so obtained by him, he is estopped from now claiming that he was not responsible for such ouster, and he must answer in damages for such injuries as the plaintiffs suffered by reason thereof. *Answer:* Affirmed, if you find that defendant participated as set forth in this point. The defendant denies that he did anything except to aid in carrying out a chaff bed, at the request of the sheriff. [5]

The court charged in part as follows:

[He (Mountz) gave notice to the plaintiffs to quit the premises and subsequently requested them to do so, and Mr. Mills, attorney for Mr. Nunemaker, the administrator, subsequently requested them to do so, in March, 1900, three months after the date of first notice, stating that it was his desire to have possession of the property on April 1, 1901, when deed was to be made and possession given, in pursuance of the order of the court.] [6]

[These proceedings were begun in the name of J. J. Mountz,

who states that he did so at the instance of John Nunemaker, the administrator, and for the latter, and Justice Martin supports him in this declaration.] [7]

[Mr. Nunemaker testified to the payment of money to his daughter, Mrs. Behrens, the present plaintiff, under the agreement with her attorney, Liedich.] [8]

[The title of Mrs. Behrens to the land, as an heir and grantee of her father, has been divested by the orphans' court sale, and it was her duty to remove therefrom.] [9]

[There can be no recovery for the berries which were growing in the fields, or the cherries which were growing on the trees. They are not emblements; they had not been gathered at the time of the eviction. When they were gathered, if at all, the testimony has not showed, and in any event, we deem it immaterial. As to the potatoes, we instruct you, that if they were in the ground when the deed was delivered to Mountz, they passed with the land.] [10]

[As to the vegetables, beans, lettuce, etc., claimed for, it does not appear when they were appropriated and used by Mountz, if at all; besides, conceding that the proceeding to recover possession, instituted before Martin, was not in due form, Mountz, as already stated, had the right to pay the balance of the purchase money at any time, and thus secure the right of possession, and then proceed by legal process to have the plaintiffs evicted, and when this had been accomplished would have had the right to take possession of the premises and use the vegetables, which they, the plaintiffs, had without lawful right planted on the premises.] [11]

[The plaintiffs cannot recover for any annoyances occasioned to them by the eviction.] [12]

[It is a rule of law that where one willfully and corruptly testifies falsely to a matter material to the issue, a jury may be justified in wholly disregarding the testimony of the witness. If you, therefore, find that Mrs. Behrens willfully perjured herself, by the denial of the letters alleged to have been written by herself and offered in evidence, then this would properly tend to discredit her claim, and justify the conclusion that her testimony should be disregarded.] [13]

[There can be no recovery for any furniture that was destroyed after the eviction by reason of inclement weather, or otherwise. It was only what was injured or destroyed in removing it from the house, and placing it upon the roadside, that there can be a recovery for.] [14]

Verdict and judgment for plaintiff for six cents. Plaintiff appealed.

*Errors assigned* were (1) refusal to continue the case; (2–4) rulings on evidence, quoting the bill of exceptions; (5–14) above instructions, quoting them.

*E. M. Biddle, Jr.,* with him *F. B. Sellers, Jr.,* for appellant.— Up to September 21, 1901, the title to the land, and the right to its possession and to the income and profits thereof, remained in Mrs. Behrens, the plaintiff: Greenough v. Small, 137 Pa. 132; Dunlap's App., 182 Pa. 267.

From the nature of the subject, the defendant alone could give the exact date when he converted each part of the crops, and under such conditions the plaintiffs would not be required to produce this evidence: McCown v. Quigley, 147 Pa. 307.

Inconvenience resulting from a tort, where it amounts to physical discomfort, is a proper subject of compensation: Sedgwick on Damages, sec. 42; Scott Twp. v. Montgomery, 95 Pa. 444; Emery v. Lowell, 109 Mass. 197; Ross v. Leggett, 61 Mich. 445.

It is not the law that men are responsible for their negligence only to the extent of the injuries which they know would follow from it: Pittsburg v. Grier, 22 Pa. 54; Scott v. Hunter, 46 Pa. 192; McGrew v. Stone, 53 Pa. 436; Fairbanks v. Kerr, 70 Pa. 86; Billmeyer v. Wagner, 91 Pa. 92; West Mahonoy Twp. v. Watson, 116 Pa. 344.

The plaintiff, on cross-examination, denied authorship of the letters, and her denial should have been accepted as conclusive: Wright v. Cumpsty, 41 Pa. 102; Hildeburn v. Curran, 65 Pa. 59.

In the face of her denial, the audible intimation of the counsel for defendant that she was lying when she made this denial

was highly improper, and the court's refusal to withdraw a juror and continue the case at defendant's costs was erroneous: Fisher v. Penna. Co., 34 Pa. Superior Ct. 500; Wagner v. Hazle Township, 215 Pa. 219; Walsh v. Wilkes-Barre, 215 Pa. 226.

The admission of copies of the notices served on the plaintiff by Mountz and Mills (second assignment of error) was flagrantly erroneous: Milliken v. Barr, 7 Pa. 23; Carland v. Cunningham, 37 Pa. 228.

The plaintiff was entitled to an unqualified affirmance of his fourth point (fifth assignment): Citizens' Pass. Ry. Co. v. Ketcham, 122 Pa. 228; Lingle v. Ry. Co., 214 Pa. 500; McCarthy v. DeArmit, 99 Pa. 63.

*S. B. Sadler*, with him *Herman Berg, Jr.*, for appellee.—It is true as a general principle that the title of the purchaser at an orphans' court sale is not complete until the deed has been delivered; but the decree of confirmation is conclusive evidence that the title of the decedent is legally transferable to the purchaser upon compliance with the conditions of sale: Potts v. Wright, 82 Pa. 498; Fahrig v. Schimpff, 199 Pa. 423; Robb v. Mann, 11 Pa. 300; Ins. Co. v. Graybill, 74 Pa. 17; Holmes' App., 108 Pa. 23; Demmy's App., 43 Pa. 155; Frick Coke Co. v. Laughead, 203 Pa. 168; Erb v. Erb, 9 W. & S. 147; Dunlap's App., 182 Pa. 267; Greenough v. Small, 137 Pa. 132; Leshey v. Gardner, 3 W. & S. 314.

Where the parties claim to hold title in a certain way, declarations or contradictions inconsistent therewith may be shown: Miller v. Baker, 160 Pa. 172; Akin v. McKeown Oil Co., 189 Pa. 39; Wilson v. Wilson, 137 Pa. 269; Moore v. Neubert, 21 Pa. Superior Ct. 144; Dougherty v. Railways Company, 213 Pa. 346; Commonwealth v. Greason, 204 Pa. 64.

It is peculiarly the discretionary duty of the trial court to see that the trial is conducted in a legal and orderly manner, and unless that discretion is abused such order is not the subject of an appeal: Commonwealth v. McMahon, 14 Pa. Superior Ct. 621; Commonwealth v. Striepeke, 32 Pa. Superior Ct. 82; Hale v. Hale, 32 Pa. Superior Ct. 37; Thompson v. Stevens, 71 Pa. 161.

OPINION BY PORTER, J., October 12, 1908.

This is an action of trespass for damages resulting from an unlawful eviction. Esther Nunemaker died on March 3, 1899, intestate, seized of a small farm in Frankfort township, Cumberland county, and leaving to survive her as sole heirs at law her husband, John Nunemaker, and two daughters, Mary Nunemaker and Elizabeth, married to Frederick Behrens. John Nunemaker took possession of the farm as tenant by the curtesy, and on March 29, 1899, leased a part of the farm to Frederick and Elizabeth J. Behrens, the plaintiffs and appellants in this case, who took possession under the said lease. Subsequently, on June 26, 1899, John Nunemaker conveyed his estate by the curtesy in said farm to his two daughters, Elizabeth Behrens and Mary Nunemaker, the deed being delivered to the grantees about two days after that time, and being subsequently recorded. After the delivery of said deed the plaintiffs continued in possession of the whole farm, holding under the deed instead of under the lease. On January 20, 1900, John Nunemaker obtained letters of administration on the estate of Esther Nunemaker, and, on February 5, 1900, secured from the orphans' court of Cumberland county an order for the sale of the said farm for payment of the debts of the said decedent. This order of sale having subsequently been modified and continued, the administrator sold the farm, on October 27, 1900, to John J. Mountz, the defendant and appellee, for the sum of $672, of which amount the defendant paid ten per cent on the day of sale and forty per cent additional on December 11, 1900; the sale was confirmed on November 26, 1900, and the remaining one-half of said purchase money was, according to the terms of sale, to be paid on April 1, 1901. Mountz, the purchaser and the defendant in this action, made no further payment on account of the purchase money until September 21, 1901, on which day he paid the balance of the purchase money and Nunemaker, the administrator, delivered to him a deed for the farm. Mountz, on or about December 15, 1900, notified Mrs. Behrens to leave the farm and surrender possession to him within ninety days from that date, and G. E. Mills, Esq., attorney for John Nunemaker, the administrator,

also gave her notice to quit by the middle of March, 1901. Mrs. Behrens refused to surrender possession as thus required, and remained in possession. Mountz, on June 21, 1901, while half of the purchase money still remained unpaid, began a proceeding, presumably under the Act of April 9, 1849, P. L. 524, against Frederick Behrens and Elizabeth Behrens, his wife, to obtain possession of the farm. The proceedings were had before a single justice who fixed the date for the hearing seven days after the issuance of the summons, and, after a continuance, the case was heard in the absence of the defendants before the one justice and a jury of six men. Judgment was entered against the defendants in that action on July 3, 1901, and on the same day a writ of possession was delivered by the justice to the sheriff. On July 3, 1901, the sheriff with his deputy and with J. J. Mountz, this defendant, and several members of the family of the defendant went to the house occupied by the appellants and, in the absence of Frederick Behrens, forcibly evicted Elizabeth Behrens and her children and removed all the furniture, bedding, provisions, etc., of plaintiffs and deposited them along the side of the public road. Mountz brought his household goods with him at the time, ready to take possession as soon as the plaintiff's household goods had been removed from the domicile, and at once moved in with his family and has since that time retained possession of the farm. The plaintiffs brought this action for damages alleged to have resulted from an unlawful eviction and under the instructions of the court recovered nominal damages in the court below and now appeal.

The first specification of error refers to a remark made by counsel for the appellee, when cross-examining Elizabeth Behrens at the trial in the court below. The remark was a flagrant violation of the principles which in every court ought to control the orderly administration of justice, it was likewise an abuse of that advantage which counsel, as an officer of the court, has over the witness who is under examination. The remark was however at once withdrawn upon objection being made and the court instructed the jury that they must not regard it. The nature of the remark was such that the necessity

for the withdrawal of a juror and continuance of the cause was one of those matters in which much must necessarily be left to the discretion of the court below: Moore v. Neubert, 21 Pa. Superior Ct. 144; Dougherty v. Railways Company, 213 Pa. 346; Commonwealth v. Greason, 204 Pa. 64. The question is a very close one but we do not feel warranted in convicting the court below of an abuse of discretion and the specification is dismissed.

The second specification of error refers to the admission in evidence of copies of the notices to quit alleged to have been served by the defendant upon the plaintiffs, without notice having been given to produce the notices actually served. The papers offered in evidence and those which had been delivered to the plaintiffs were contemporary writings, the counterparts of each other, one of which was delivered and the other preserved; they may both be considered as originals and the one which was preserved may be received in evidence without notice to produce the one which was delivered: Eisenhart v. Slaymaker, 14 S. & R. 153; Cole v. Ellwood Power Co., 216 Pa. 283. This specification of error is not sustained.

The third specification of error refers to the testimony of J. B. Martin, the justice of the peace before whom the defendant, Mountz, instituted the possessory action, under the pretended forms of which the plaintiffs were evicted. This testimony was to the effect that Mountz himself had made the complaint, but that it was done at the instance of Nunemaker, the administrator who had made the sale of the land by direction of the orphan's court. This testimony did not in itself work any injury to plaintiff's cause, for Mountz himself remained liable for all the damages, if any resulted from an unlawful trespass, even although there might have been other persons who would have been liable also if they had been joined as defendants in this action. This assignment is, for this reason, not sustained. The effect which the learned judge of the court below gave to this evidence in his charge is, however, an entirely different matter.

We are of opinion that the court below erred in admitting in evidence the letters alleged to have been written by Mrs. Behrens to G. E. Mills, Esq., who was the attorney representing

Nunemaker, the administrator. The letters were offered "for the purpose of showing that Mrs. Behrens did not claim to be the owner of the property, but was only endeavoring to receive money from the administrator." The letters did not show that Mrs. Behrens did not claim to be the owner of the property. The cases are not many in which the actual owner of property would not agree to move out upon the payment of a sufficient sum of money, the amount is usually the only matter with regard to which there is any difficulty in effecting an arrangement. The letters did indicate a willingness upon her part to move out in case she was paid a sufficient sum of money to recompense her for doing so, but in none of them is there any intimation that she did not assert that she had the right to remain. These letters were immaterial to the issue being tried. Mrs. Behrens having denied that she had written them, it was not competent for the defendant to produce evidence contradicting her on that immaterial matter. The evidence contradicting her on that immaterial question having been improperly admitted, it was error for the court in charging the jury to say: "If you, therefore, find that Mrs. Behrens wilfully perjured herself, by the denial of the letters alleged to have been written by herself and offered in evidence, then this would properly tend to discredit her claim and justify the conclusion that her testimony should be disregarded." The fourth and thirteenth specifications of error are sustained.

The facts as set forth in plaintiffs' fourth point were undisputed, the defendant himself had admitted them to be true in his testimony, the plaintiffs were entitled to an unqualified affirmance of the legal conclusions arising from these facts, and for the court to qualify the affirmance was error: Citizens' Passengers Railway Co. v. Ketcham, 122 Pa. 228; Lingle v. Scranton Ry. Co., 214 Pa. 500. The court affirmed the point but added: "if you find that defendant participated as set forth in this point. The defendant denies that he did anything except to aid in carrying out a chaff bed, at the request of the sheriff." In thus qualifying the point the court inadvertently misstated the testimony. The defendant admitted that he made the complaint before the justice of the peace upon which the whole proceeding

was founded.  He admitted that he had brought his household goods there in company with the sheriff for the purpose of taking possession and that he did take possession of the house as soon as the goods of the plaintiffs were thrown out. He did not, as stated by the court, deny that he did anything except to aid in carrying out a chaff bed.  It was the father of the defendant who had testified as to what he himself did, who had given this account of his participation in the proceeding.  The defendant had in his testimony admitted that he helped to carry out the goods and put them along the road, alleging that he had been deputized by the sheriff to help.  He admitted that, after the plaintiffs were evicted, he had used the sweet corn, the vegetables growing in the garden and the hay in the fields, some of which had been actually cut by the plaintiffs.  The fifth specification of error is sustained.

The learned judge in charging the jury said: "These proceedings were begun in the name of J. J. Mountz, who states that he did so at the instance of John Nunemaker, the administrator, and for the latter, and Justice MARTIN supports him in this declaration." This language of the charge if it stood alone might not have been objectionable, but taken in connection with the language used by the learned judge in qualifying the fourth point submitted by the plaintiffs, and the oral charge as a whole, it must have left upon the minds of the jury the impression that John Nunemaker was the person who was responsible for the eviction and not this defendant.  The tendency of the whole charge was to lead the jury to the conclusion that this defendant was only nominally connected with the proceeding.  That this defendant is responsible for any damages suffered, if the eviction was unlawful, is too clear for argument, he having made the complaint which originated the proceeding and having aided in the actual physical execution of the writ of possession: McCarthy v. DeArmit, 99 Pa. 63.  The seventh specification of error is sustained.  The learned court fell into error in stating: "Mr. Nunemaker testified to the payment of money to his daughter, Mrs. Behrens, the present plaintiff, under an agreement with her attorney Leidich." The witness did not so testify and the eighth specification of error is sustained.

The learned judge charged the jury as follows: "The title of Mrs. Behrens to the land, as an heir, and grantee of her father, had been divested by the orphan's court sale, and it was her duty to remove therefrom." The learned judge evidently fell into the error of holding that the confirmation of the sale by the orphan's court divested the title of the heir. "It is well settled that an orphan's court sale does not divest the title of the heirs until after the confirmation thereof and conveyance delivered under the order of the court. . . . The sale, even after confirmation, does not divest the title of the heirs of the decedent for it remains in the power of the court until a deed has been executed and delivered. Until then the heirs' right to maintain ejectment, even against the purchaser has not gone. . . . Until then no conversion takes place, and if the heir of the decedent dies even subsequently to the confirmation of the report of sale but before the deed is delivered, his interest descends as land not as money:" Greenough v. Small, 137 Pa. 132. The confirmation by the orphans' court of a sale of real estate by an executor made in pursuance of his authority, is not complete until the purchase money be paid and a deed delivered. A sale and confirmation alone does not divest the title of the heir: Leshey v. Gardner, 3 W. & S. 314. Upon a sale of real estate of an intestate by an order of the orphans' court for the payment of debts, the title remains in the heir until the contract of sale be executed by the payment of the purchase money and delivery of the deed: Erb v. Erb, 9 W. & S. 147; Biggert's Estate, 20 Pa. 17; Schmid's Estate, Dunlap's Appeal, 182 Pa. 267. The defendant did not acquire title to the land until the day when he paid the balance of the purchase money and received his deed on September 21, 1901, more than two months after he had forcibly evicted these plaintiffs. The ninth specification of error is sustained.

The proceeding to obtain possession under which the defendant acted, having been instituted before a single justice of the peace, was void for want of jurisdiction: Merritt v. Whitlock, 200 Pa. 50; Sperry v. Seidel, 218 Pa. 16. The eviction of the plaintiffs was, therefore, illegal and this defendant, who instituted the action and assisted in the dispossession, is liable for

damages in an action of trespass. The dispossession was without any legal process to justify it, the manner of the dispossession therefore was no protection to the defendant against this action; it was not incumbent on the plaintiffs to reverse the judgment which the justice of the peace had no jurisdiction to enter. The title and right of possession was at the time of the eviction in the plaintiffs and not in the defendant, the eviction was therefore unlawful, not only because the process was void but because the defendant had no right to possession. The defendant turned the plaintiffs out under a void legal process at a time when he had no right to turn them out even if he had proceeded in a regular legal manner. The general rule is that a man is answerable for the consequences of his fault which are natural and probable, such as reasonable forecast and prudence might have foreseen: Scott v. Hunter, 46 Pa. 192; McGrew v. Stone, 53 Pa. 436; West Mahanoy Township v. Watson, 116 Pa. 344. The damages in the present case were not to be measured by the benefits accruing to the defendant, but by the injuries sustained by the plaintiffs. If there were upon the land from which the plaintiffs were evicted fruits and vegetables which were about to ripen and crops which were matured or were about to mature, and which did ripen and mature prior to September 21, 1901, when the title passed to the defendant, and if the plaintiffs were by the eviction deprived of the opportunity to gather those fruits and crops, then they were in this action entitled to recover the value thereof. If there were sweet corn, beans and other vegetables growing in the garden which were ready for present use or which the evidence established would have been ready for use prior to the time defendant actually acquired title to the land, the plaintiffs were entitled to compensation for the loss of such vegetables. If the furniture of the plaintiffs was thrown out of the house while it was raining, or when the weather conditions were such that they ought to have foreseen that it was about to rain, and if it was actually injured by the rain, the defendant is just as responsible for that injury as if he had thrown the furniture into the water. The tenth, eleventh and fourteenth specifications of error are sustained.

The judgment is reversed and a venire facias de novo awarded.