522 A.2d 1

**George CHARLES, Appellant,**

**v.**

**GIANT EAGLE MARKETS, Appellee,**

**v.**

**STANLEY MAGIC DOOR, INC., and Jed Doors, Appellees.**

Supreme Court of Pennsylvania.

Reargued Sept. 16, 1986.

Decided Feb. 20, 1987.

Peter J. Mansmann, Mansmann, Beggy & Campbell, Pittsburgh, Richard C. Angino, Neil J. Rovner, PA Trial Lawyers Ass'n, Harrisburg, for appellant.

Robert S. Garrett, Pittsburgh, for Stanley Magic Door, Inc., & JED Doors.

John Newborg, Pittsburgh, for Giant Eagle.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.*

The important issue of first impression raised in this appeal is whether, under the Comparative Negligence Act[1] and the Uniform Contribution Among Tortfeasors Act ("UCATA"),[2] a non-settling tortfeasor is relieved of responsibility for payment of his proportionate share of damages to the extent that the consideration paid by a settling tortfeasor for a release from the plaintiff exceeds the settling tortfeasor's proportionate share of damages as determined by the jury. For the reasons that follow we have concluded that sound policy as well as proper interpretation of the pertinent statutory authority compel a holding that the non-settling tortfeasor is required to pay his full pro-rata share.

### I.

Appellant George Charles ("Charles") filed an action in trespass against appellee Giant Eagle Markets, Inc., ("Giant Eagle") for damages resulting from injuries sustained in a fall near the door of one of Giant Eagle's retail stores on January 17, 1977. Giant Eagle joined Stanley Magic Door, Inc., and Jed Door ("Stanley"), which the parties agree are a single entity, as additional defendants. Prior to trial, Charles executed a release to Giant Eagle in exchange for Twenty-two Thousand Five Hundred Dollars ($22,500.00). On March 27, 1981, after trial, the jury returned a verdict in favor of Charles in the amount of Thirty-one Thousand Dollars ($31,000.00). In accordance with instructions consistent with the provisions of the Comparative Negligence Act, the jury found Giant Eagle sixty percent (60%) negligent and Stanley forty percent (40%) negligent. Thus, had it not settled, Giant Eagle's proportionate share of the verdict would have been Eighteen Thousand Six Hundred Dollars ($18,600.00), Three Thousand Nine Hundred Dollars

---

* This case was reassigned to this writer.

1. 42 Pa.C.S. § 7102.

2. 42 Pa.C.S. § 8321 *et seq.*

($3,900.00) less than the consideration paid for the release. Stanley's proportionate share of the verdict was Twelve Thousand Four Hundred Dollars ($12,400.00).

Stanley entered judgment on the verdict and paid Charles Eight Thousand Five Hundred Dollars ($8,500.00), taking the position that the verdict against it should be reduced by the amount by which Giant Eagle's payment to Charles exceeded sixty percent (60%) of the verdict. Charles accepted payment but reserved his claim to the remainder of Stanley's share of the verdict. Stanley subsequently filed a petition to have the judgment marked satisfied, arguing that the verdict had been paid in full. The trial court granted the petition and ordered the judgment marked satisfied. Charles thereupon appealed to the Superior Court, which affirmed. *Charles v. Giant Eagle Markets, Inc.*, 330 Pa.Super. 76, 478 A.2d 1359 (1984). This Court granted Charles' petition for allowance of appeal and heard argument on September 19, 1985, and reargument on September 16, 1986, and the matter is now ripe for disposition.

## II.

█ The respective obligations between parties to a lawsuit can be finally determined either by way of a bona fide settlement or through trial. Settlement is a valuable tool in our arsenal of dispute resolution and it should not be undermined. The obligation of a tortfeasor as determined by settlement with the plaintiff should not be affected by a subsequent verdict against any of the remaining defendants. The inducements for a defendant to settle are the certainty of the agreed-upon obligation and the avoidance of the vagaries of trial. The finality of the settlement agreement is crucial. Any subsequent trial against the remaining defendants should not disturb the resolution reached between the plaintiff and the settling tortfeasor. It would be an equal disservice to a supportive settlement policy to provide a windfall to a non-settling tortfeasor where the settlement proves to be more generous than the subsequent verdict. As noted by the late Mr. Justice Musmanno, in

dissent, in *Daugherty v. Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956):

> To me it is absurd that a tortfeasor, because of the generosity of another person with whom he is no way associated except in fault, should by law be excused from paying what a tribunal of law has determined he should pay as a result of his own adjudicated individual wrong. *Id.*, 386 Pa. at 377, 126 A.2d at 735.

Appellees' concern over a windfall to the plaintiff, if appellee were to be required to pay its full pro-rata share, is far overshadowed by the injustice of the result they urge. In addition to the erosion such a position would have upon a policy encouraging settlements, it is also bottomed on a fundamentally flawed premise. It assumes that the jury verdict more accurately measures the tortfeasor's obligation than that which is agreed upon between the parties by way of settlement. Such an assumption is without foundation either in reason or experience. There is no basis for concluding the jury verdict must serve as a cap on the total recovery that a plaintiff may receive. The responsibility of the settling tortfeasor should be finally resolved by the terms of the settlement.

The fallacy that the jury's verdict represents a measurement of damages superior to that agreed upon by the settling parties has been further illustrated by the Supreme Court of our sister state, New Jersey:

> There is no precise measure of the amount of wrong. Even if the trial is as to damages only, successive juries would rarely make the identical appraisal. Nor is there reason to suppose that the jury's evaluation of losses is more accurate than the evaluation made by the parties to the settlement. Surely where liability is contested, the verdict may not reflect the exact worth of the injuries. When the cost of litigation is taken into account, it becomes still more difficult to say that enforcement of the judgment debtor's *pro rata* liability would enrich the plaintiff.

*Theobald v. Angelos,* 44 N.J. 228, 239–240, 208 A.2d 129, 135 (1965).

The obligations of remaining defendants, on the other hand, are determined by the verdict. Contrary to the result urged by appellees, where a release has been executed, the verdict is reduced only by the proportionate share of the settling tortfeasor. The actual amount of the release, if it exceeds this sum, is of no consequence in the satisfaction of the judgment of the remaining defendants. The fact that the plaintiff may receive a larger dollar amount in damages than that fixed by the jury does not militate against such an approach. The justification for permitting this additional recovery has been well stated by the Supreme Court of Texas:

> A percent credit necessarily means that settling plaintiffs may recover more than the amount of damages ultimately determined, but they also may recover less. Plaintiffs bear the risk of poor settlements; logic and equity dictate that the benefit of good settlements should also be theirs.
>
> *Duncan v. Cessna Aircraft Company,* 665 S.W.2d 414, 430 (Tex.1984).

Moreover, holding the non-settling tortfeasor liable for his full proportionate share advances our strong policy in favor of settlement. As recently stated by the Supreme Court of Colorado:

> Not deducting the settlement amount from the judgment against the [non-settling tortfeasor] promotes the [Uniform Contribution Among Tortfeasors] Act's goal of encouraging settlements. If the plaintiff knew that any settlement reached would be deducted from the proportionate share owed to the plaintiff by another tortfeasor, the plaintiff would be less likely to settle. Similarly, tortfeasors might refuse to settle, hoping that their just share of damages would be reduced by the settlement amount paid by another tortfeasor.
>
> *Kussman v. City and County of Denver,* 706 P.2d 776, 782 (Colo.1985) (en banc).

## III.

■ The pertinent language of the comparative negligence statute, 42 Pa.C.S. § 7102, is unquestionably compatible with the result reached today. That language provides, "... each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants...." 42 Pa.C.S. § 7102(b). This provision also limits the right to seek contribution to the amount a defendant "is so compelled to pay [to the plaintiff] more than his percentage share...." *Id.* Applying this language to the instant facts Stanley would be obligated to pay Twelve Thousand Four Hundred Dollars ($12,400) to the plaintiff and not the Eight Thousand Five Hundred Dollars ($8,500) as suggested by appellees. Moreover, Stanley would have no right of contribution against any remaining defendant since that right is only triggered where the party seeking contribution has been required to pay *"more than"* the pro-rata share.[3] Appellees' reliance upon the Superior Court's decision in *Mong v. Hershberger*, 200 Pa.Super. 68, 186 A.2d 427 (1962), to suggest that Giant Eagle has a right to seek contributions from the non-settling defendant is also in error. *See* N. 4 *infra.* The settling tortfeasor elected to pay the

3. Although not specifically raised under the facts of this appeal it must be noted that the allowance of a right of contribution to a non-settling defendant against a defendant who settled the claim prior to trial would destroy the concept of settlement. The heart of settlement, the avoidance of the exposure of trial, would be completely undermined if the settling defendant remained exposed until the final verdict is entered. It is little solace to a settling defendant to know that his agreement insulates him against exposure to additional claims asserted by a plaintiff, if he remains vulnerable to the claims of the remaining tortfeasors.

Moreover, settlement is not encouraged by allowing the settling defendant the right of contribution against the remaining defendants. Although the possibility of a recoupment of losses may be an additional incentive to the settling defendant who may make a bad bargain, it would be unjust to the plaintiff who makes an unfavorable settlement arrangement and is bound by it. Nor is it appropriate to allow the settling defendant to enhance his bargaining based upon the subsequent trial, the consequences of which his agreement was designed to avoid.

consideration for the release to avoid further involvement in the lawsuit. Giant Eagle has no basis for receiving a windfall by way of contribution, if by hindsight it is determined that it overestimated the extent of its exposure.

When viewed realistically, it cannot be contended that such a result is unfair to any of the tortfeasors. As one commentator has cogently explained:

> Defendants have been required under the proportional reduction rule to pay only their own share of liability, and they have not contributed anything to the settlement excess. Since they are protected by the proportional reduction rule from the burden of a low settlement, they cannot claim that they are entitled to the offsetting benefits of the rule. Indeed, to award defendants a windfall from such settlements could discourage some tortfeasors from settling in the hopes of gaining, as defendants, the benefits of the settlements of their cotortfeasors.
>
> The settled tortfeasor's claim to the benefits of a high settlement is also weak. Certainly such a tortfeasor has contracted with the plaintiff to limit liability and "buy his peace." In return, the tortfeasor can fairly be said to have contracted away the right to any benefits resulting from a determination that the settlement was "high." When this meager or nonexistent interest is weighed against the potentially harmful impact on settlements from denying the benefits to the plaintiff, the conclusion is inescapable that the settled tortfeasor's claim should be denied.

Comment, *Comparative Negligence, Multiple Parties, and Settlements*, 65 Calif.L.Rev. 1264, 1279 (1977) (footnote omitted).

In our view the UCATA, properly interpreted, supports our view. Section 8326 of the UCATA provides:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tort-feasors in the

amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

42 Pa.C.S. § 8326.

This section affords the parties to the release an option to determine the amount or proportion by which the total claim shall be reduced provided that the total claim is greater than the consideration paid. In this instance the release specifically provided:

> ... I further agree that any recovery that I may obtain against any ... corporation other than Giant Eagle Markets, Inc. ... shall be reduced to the extent of the pro rata share of ... Giant Eagle.

We find no inconsistency with the UCATA, given the clear language of both that statute and the release executed by Charles and Giant Eagle, in reducing the jury's verdict by Giant Eagle's proportionate share of damages. We conclude, therefore, that Stanley is liable for the full amount of its proportionate share of the jury verdict.[4]

Accordingly, the Order of the Superior Court is reversed and the satisfaction of the judgment entered by the court below is hereby vacated.

PAPADAKOS, J., files a concurring opinion joining the majority opinion, in which LARSEN, J., joins.

ZAPPALA, J., files a dissenting opinion.

PAPADAKOS, Justice, concurring.

I join in the Majority Opinion. Because of the importance of the issues raised by this case, however, I am compelled to express my understanding of the interplay between our comparative negligence statute, the former contributory negligence law and the pertinent sections of the uniform

---

**4.** *Daugherty v. Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956), was wrongly decided and must be overruled. We also reject *Mong v. Hershberger*, 200 Pa.Super. 68, 186 A.2d 427 (1962), which was an attempt to ameliorate the result reached in *Daugherty v. Hershberger*, *supra*.

contribution among tortfeasors acts as now applicable, all of which are necessary in explaining the result reached by the court today.

This is the appeal of George Charles (Appellant) from the Opinion and Order of Superior Court affirming the order of the Court of Common Pleas of Allegheny County directing the Prothonotary of that County to mark satisfied a judgment entered against Appellees, Giant Eagle Markets, (Giant Eagle), Stanley Magic Door, Inc., and Jed Doors (Stanley).

On January 17, 1977, Appellant was in the process of entering the front door entrance of a Giant Eagle Supermarket on Center Avenue in the City of Pittsburgh. This door is an electronically operated door commonly found in supermarkets, and is activated by stepping on a floor mat adjacent to the door. Appellant stepped onto the mat, which was covered with snow, ice and slush, but the door failed to open.

As Appellant began to apply pressure to the resisting door, his foot slipped on the snow and ice and the door suddenly swung open, throwing him to the ground. The fall caused Appellant to suffer injuries to his right arm, hand, and left leg, and precipitated this trespass action originally brought against Giant Eagle.

In his complaint, Appellant claimed that his injuries were caused by Giant Eagle's failure to keep the door mat free and clear of snow and ice, and to keep the door in working order. Giant Eagle, in turn, joined Stanley Magic Door, Inc., and Jed Doors, the manufacturer of the door, as additional defendants, claiming that they were responsible to Appellant for his injuries by designing and selling a door that would not operate in extremely cold weather.

Prior to trial, Appellant and Giant Eagle entered into a release pursuant to the Uniform Contribution Among Tortfeasors Act[1] (UCATA) for $22,500.00. The terms of the release discharged Giant Eagle from any actions, claims

1. Act of July 9, 1976, P.L. 586, 42 Pa.C.S. § 8321, et seq.

and demands in consequence of the accident which occurred on January 17, 1977, and provided that any recovery Appellant would obtain against any person other than Giant Eagle on account of the accident would be reduced to the extent of Giant Eagle's pro rata share of such damage as may be attributed to Giant Eagle of Appellant's damages recoverable against all the tortfeasors.

At trial, a jury found Appellant's damages to be $31,-000.00, and apportioned negligence between Giant Eagle (60% causally negligent) and Stanley (40% causally negligent). Based on the allocation of negligence, Giant Eagle's pro-rata share of the damages was $18,600.00 and Stanley's was $12,400.00. Appellant was found to be free of contributory negligence.

Stanley filed a timely post-trial motion seeking to mold the verdict, which was denied. Stanley then entered judgment on the verdict and claimed that since Appellant received $22,500.00 from Giant Eagle by the terms of the release, Stanley was only required to pay to Appellant $8,500.00 (the difference between the verdict of $31,000.00 and the $22,500.00 settlement received), notwithstanding Stanley's liability of $12,400.00 (40% of $31,000.00). The trial court agreed with Stanley, and by its order of March 2, 1982, directed the Prothonotary to mark the judgment against Stanley satisfied upon its payment of $8,500.00. Appellant took an appeal to Superior Court, arguing that the Comparative Negligence Act[2] has modified the law with respect to contributions among tortfeasors under the UCATA so that he is entitled to 40% of the verdict from Stanley regardless of the settlement made with Giant Eagle. The Honorable John Brosky, writing for the Superior Court panel, affirmed the trial court, relying on this Court's prior decision in *Daugherty v. Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956), and the companion Superior Court Case of *Mong v. Hershberger*, 200 Pa.Superior Ct. 68, 186 A.2d 427 (1962). In *Daugherty*, we interpreted Section 4 of the UCATA to require that a verdict winner's claim against all

2. Act of July 9, 1976, P.L. 855, No. 152, as amended, 42 Pa.C.S. § 7102.

tortfeasors must be reduced by the amount of the consideration paid for the release by a settling tortfeasor. In *Mong*, Superior Court permitted the overpaying settling tortfeasor to seek contribution from the non-settling tortfeasor to the extent that the amount paid by the settling tortfeasor exceeded its percentage of negligence.

Under this analysis, since Giant Eagle's liability as determined by the jury was only for $18,600.00, it overpaid its share of liability by $3,900.00 and, therefore, had a right of contribution from Stanley for that amount to the exclusion of Appellant.

Appellant sought review of Superior Court's opinion with this Court, and renews his arguments that the Comparative Negligence Act has modified the effect of tortfeasor releases executed pursuant to the UCATA so that he is entitled to keep all of the consideration paid by Giant Eagle in its release, and also is entitled to recover the $12,400.00 from Stanley as its judicially determined percentage of liability to him. Allocatur was granted because of the importance of addressing these issues and re-examining our decision in *Daugherty* and Superior Court's *Mong* decision in light of the Comparative Negligence Act. Like the majority, I conclude that the comparative negligence statute has modified UCATA so as to alter the effect of a release as to a non-settling tortfeasor and agree that we must reverse Superior Court and in the process bury *Daugherty* and *Mong* forever.

Before discussing the effect of the Comparative Negligence Act on the UCATA, it is important to set out the basic rules of tort law as they existed in Pennsylvania before these statutes were enacted, and to determine how, if at all, these earlier rules of law have been affected since Comparative Negligence became the law of our Commonwealth.

At common law, it was acknowledged as an undoubted rule of law that where one suffered injury through the mutual or concurrent negligence of two or more persons, they were jointly liable and could be sued for the damages

sustained, jointly or severally at the option of the party injured. If the injured party by his own negligence contributed to his own injury, however, the law would not afford him any remedy whatsoever against any or all of the persons whose wrong, in concurrence with his own, caused the injury. *Borough of Carlisle v. Brisbane*, 113 Pa. 554, 6 A. 372 (1886); *Railroad v. Norton*, 24 Pa. 465 (1855); *Railroad Co. v. Aspell*, 23 Pa. 147 (1854); *Wynn v. Allard*, 5 Watts and Serg 524 (1843); *Simpson v. Hand*, 6 Whart 320 (1840).

Additionally, when an individual was injured by the negligence of more than one and recovered damages against them, he could proceed against any one for payment of the whole judgment. Such payment would operate as a satisfaction to the injured party and would release all others liable for the same injury. *Hilbert v. Roth*, 395 Pa. 270, 149 A.2d 648 (1959); *Anstine v. Pa.R.R. Co.*, 352 Pa. 547, 43 A.2d 109 (1945); *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937); *Mason v. C. Lewis Lavine, Inc.*, 302 Pa. 472, 153 A. 754 (1931); *Smith v. Roydhouse, Arey and Co.*, 244 Pa. 474, 90 A. 919 (1914); *Seither v. Philadelphia Traction Co.*, 125 Pa. 397, 17 A. 338 (1889); *Fox v. Northern Liberties*, 3 Watts and Serg 103 (1841).

Finally, where a tortfeasor was forced to discharge the common liability of his concurrent tortfeasors by paying the full amount of damages to the injured party, he was also forced to bear the entire amount without the right to seek contribution from his confederates. *Goldman v. Mitchell-Fletcher Co.*, 292 Pa. 354, 141 A. 231 (1928); *Turton v. Powelton Electric Co.*, 185 Pa. 406, 39 A. 1053 (1898); *Boyer v. Bolender*, 129 Pa. 324, 18 A. 127 (1889); *North Pennsylvania R. Co. v. Mahoney*, 57 Pa. 187 (1868); *Merryweather v. Nixan*, 8 T.R. 186 (1799).

These concepts of 1) joint and several liability, 2) contributory negligence, and 3) no right of contribution between joint-tortfeasors, under the early common law, were premised on three basic assumptions that have plagued tort law ever since they evolved. First, there was the assumption

by our courts that where parties were mutually at fault, no apportionment of the damages could be made. Since "the law had no scales to determine whose wrongdoing weighed most in the compound that occasioned the mischief" (*Railroad v. Norton*, 24 Pa. 465 (1855)), negligent plaintiffs were not permitted any recovery against defendants whose negligence contributed to their injuries. The corollary to this rule was that the law was also unable to apportion damages among negligent defendants and that, therefore, they were each liable for the full amount of the damages caused by the concurrently or mutually negligent acts of the other tortfeasors. *Menarde v. Philadelphia Transportation Co.*, 376 Pa. 497, 103 A.2d 681 (1954); *Carlson, et al v. A & P Corrugated Box Corporation*, 364 Pa. 216, 72 A.2d 290 (1950).

Where several negligent acts united in one injury to the plaintiff, the law was forced to look at the acts of each concerned or causing the injury as the acts of all. Since each tortfeasor was fully responsible for all the harm caused, a plaintiff could pick and choose among the various tortfeasors for satisfaction of the judgment against the tortfeasor. The law gave the injured person the right to obtain but one satisfaction for the damages done to him and, when that compensation was received from any of the wrongdoers, his right to any further remedy was at an end. *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937). Similarly, once one tortfeasor was forced to pay the entire judgment, he could not seek contribution from the other tortfeasors, because the courts would not aid wrongdoers in seeking contributions from wrongdoers. The parties would be left to their own devices, especially since the law did not know how to apportion damages among individuals whose varying degrees of fault caused injury to the plaintiff.

These harsh rules were continuously under attack by bench and bar alike, with the result that exceptions were grafted onto the doctrines to ameliorate their harshness.

The rule that a plaintiff's contributory negligence was an absolute bar to his recovery found certain exceptions, as

where the defendant's conduct was "willful," "wanton" or "reckless," *Scott v. Hunter*, 46 Pa. 192 (1863); where the defendant violated a rule of criminal safety, *Elliot v. Philadelphia Transportation Co.*, 356 Pa. 643, 53 A.2d 81 (1947), *Ennis v. Atkin*, 354 Pa. 165, 47 A.2d 217 (1946); where the plaintiff had no way of knowing the danger or the means to guard against it, *Pittsburgh A. & M., Pass. R. Co. v. Caldwell*, 74 Pa. 421 (1873); where the plaintiff committed negligent acts during an emergency, *Johnson v. West Chester P.R. Co.*, 70 Pa. 357 (1872), *Corbin v. City of Philadelphia*, 195 Pa. 461, 45 A. 1070 (1900) (action taken to save a life), *Guca v. Pittsburgh Rys. Co.*, 367 Pa. 579, 80 A.2d 779 (1951) (action taken to save property); or where the plaintiff's negligence did not contribute as the proximate cause of the injury, *Creed v. Pennsylvania R. Co.*, 86 Pa. 139 (1878). The concept of contribution among tortfeasors also found exception by applying the doctrine that equity is equality, and that since all the defendants were responsible for the damages, they should all share equally in the common burden. *Goldman, et al v. Mitchell-Fletcher Co.*, 292 Pa. 354, 141 A. 231 (1928); *Puller v. Puller*, 380 Pa. 219, 110 A.2d 175 (1955). Since the joint relation of the tortfeasors imposed equality of burden, the courts permitted contribution among tortfeasors as a matter of *equity*, and not under any theory of tort law, because the law still had not devised a way of apportioning the damages among the tortfeasors.

Once contribution was permitted among tortfeasors, the rule that the release of one tortfeasor released all the tortfeasors also was modified to permit contribution among the tortfeasors and to permit the injured party to recover the balance of his damages from other non-releasing tortfeasors. These rules of contribution were codified and enacted as the Uniform Contribution Among Tortfeasors Act of July 19, 1951, P.L. 1130 (42 Pa.C.S. 8321, et seq.) and permitted an injured party to settle with one of two or more tortfeasors and, subject to the limitations of the Act, have recourse to the remaining tortfeasors for the balance of any damages awarded. Specifically, we ruled in *Daugherty v.*

*Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956), that where a plaintiff settled with one party for more than his share of damages (as later determined by the jury), the settlement amount under Section 4 of the Act was applied to the judgment as entered against all tortfeasors to reduce it dollar for dollar. The remaining defendant tortfeasor was only required to pay the balance of the judgment (which, in *Daugherty*, was less than his share of liability as determined by the jury.)

In *Daugherty*, plaintiff secured judgments in the amount of $11,720.99 against Hershberger and Mong, who injured him and his family in an automobile accident. Prior to trial, Daugherty settled with Mong for $13,500.00, while the jury awarded $11,720.50 as follows:

| | Settlement paid by Mong | Jury Verdict |
|---|---|---|
| William Daugherty | $ 5,145.23 | $ 5,559.49 |
| William Daugherty, Guardian for Burdel Daugherty | 425.00 | 500.00 |
| William Daugherty, Guardian for Leora Daugherty | 650.00 | 1,000.00 |
| William Daugherty, Guardian for Rodney Daugherty | 1,000.00 | 500.00 |
| Gertrude Williams | 1,500.00 | 1,161.50 |
| Elaine C. Daugherty | 779.77 | 2,000.00 |
| Elaine C. Daugherty, Administrator of the Estate of Carl D. Williams | 4,000.00 | 1,000.00 |
| Totals | $13,500.00 | $11,720.99 |

In consideration for the money paid in the release, Daugherty agreed to relieve Mong from any liability on account of the accident and to reduce by 50% the damages he could recover against Hershberger, the other tortfeasor. When the jury returned its verdict in favor of Daugherty against Mong and Hershberger for $11,720.99, Daugherty attempted to collect 50% of the verdict ($5,860.50) from Hershberger. Hershberger argued that the verdict should be reduced by the amounts Mong paid under the release provisions as noted above.

In short, Hershberger argued that he was liable only for the difference in Mong's underpayments to William Daugherty in his own right as guardian for his minor children, Burdel and Leora. Where Mong overpaid what the jury later decided were the damages, Hershberger argued that he had no responsibility. And where Mong underpaid in excess of 50% of the jury verdict, as he did to the Estate of Carl D. Williams, Hershberger argued he was responsible only for $1000.00, or 50% of the jury verdict.

This confusing mathematical scheme was endorsed by this Court in *Daugherty* with the net result that Hershberger was only required to pay Daugherty $1839.26, instead of 50% of the jury verdict ($5860.50).

In *Daugherty*, this Court reasoned that such an interpretation of the UCATA barred the plaintiff from obtaining a double recovery. *Daugherty* could be justified as a proper application of the then existing law of contribution among tortfeasors for two reasons. First, both tortfeasors were jointly and severally liable for all the damages caused to plaintiffs and, since the law still possessed no method to apportion damages among the parties, any settlement arrived at by one defendant before trial was construed as discharging part of a common burden shared by all tortfeasors, and not as the extinguishing of the settling tortfeasors' liability.

Accordingly, Mong's settlement with Daugherty was an attempt to discharge the common liability of Mong and Daugherty. If Mong paid more for the joint harm of both tortfeasors, he was entitled to pass that benefit on to Hershberger (the joint tortfeasor) and reduce the amount Hershberger would have to pay to Daugherty, thereby not paying Daugherty more than the jury verdict required. Superior Court, in the companion case of *Mong v. Hershberger*, 200 Pa.Superior Ct. 68, 186 A.2d 427 (1962), further refined the analysis in *Daugherty* and ruled that even though Hershberger did not have to pay to Daugherty $4,021.23 (the difference between the jury verdict—$5,860.50—and the amount we ordered he pay—$1,839.26),

it would be inequitable to exonerate him from paying it to Mong, who could be charged with nothing more than an overestimation of the value of the claims. In ruling that Mong had a right of contribution from Hershberger, Superior Court invalidated Section 2 of the UCATA, which provided that a settling tortfeasor cannot seek contribution from a non-settling tortfeasor whose liability is not extinguished by the settlement. In reaching its conclusion, Superior Court argued that it would be absurd and unreasonable to deprive Mong of his right to contribution from Hershberger. We refused allocatur, and by implication, endorsed Superior Court's disposition of this issue.

In summary, prior to comparative negligence, our courts held that non-settling tortfeasors were entitled to credit on their share of verdicts for everything that settling tortfeasors paid in excess of their share of the verdict, and that settling tortfeasors were entitled to contribution from non-settling tortfeasors for overpayments made by them. By the first rule, plaintiffs were limited to one recovery, and by the second, defendants were assured that none would be forced to pay more than their common burden imposed by the verdict. Inasmuch as the law was incapable of apportioning liability or damages among the parties, these cases provided the most equitable solution then available.

On September 7, 1976, the Act of July 9, 1976, P.L. 855 No. 152, 17 P.S. § 2101 and 2102, now 42 Pa.C.S. § 7102, became effective and adopted a comparative negligence system for Pennsylvania. The actual text of this Act is short and provides in pertinent part as follows:

(a) General rule—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought but any damages sustained by the plaintiff shall

be diminished in proportion to the amount of negligence attributed to the plaintiff.

(b) Recovery against joint defendant; contribution—Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

Appellant argues that the Comparative Negligence Act has modified the law as concerns the joint and several liability of tortfeasors because their liability is now capable of being apportioned as a matter of law. That being the case, consideration paid by settling tortfeasors should be construed as payments extinguishing that settling tortfeasor's individual proportionate liability to the verdict winner, and not as an attempt to pay a common share or burden of liability, as was the law prior to comparative negligence. *Daugherty, Mong.*

Admittedly, the act is silent on this question, and legislative history is meager on the point (See, 1 Pa.Leg.J. 1701–1708 Senate 1976).

In construing the statute, however, courts are guided by the rules of statutory construction, 1 Pa.C.S. § 1921(c). These rules require a court to consider, inter alia: (1) the occasion and necessity for the statute; (2) the mischief to be remedied; (3) the object to be attained; (4) the former law; and (5) the consequences of a particular interpretation, (See, 1 Pa.C.S. § 1921(c)(1), (3), (4), (5) and (6)).

In my view, comparative negligence was the legislative response to the inequities the law formerly imposed because of the harsh doctrine of contributory negligence. And as previously noted, contributory negligence was rooted in the belief that the law was incapable of apportioning fault

between plaintiffs and defendants, or among defendants. That being the chief mischief to be remedied and the occasion and necessity for the statute, it is obvious that the legislature, in enacting a comparative negligence statute, abandoned the old premise in favor of an acknowledgement that fault and liability could, in fact, be apportioned among a plaintiff and defendants.

It makes no difference that plaintiffs are barred from recovery where their causal negligence exceeds 51% (42 Pa.C.S. § 7102(a)), because such a limitation only reflects the legislative judgment that a party more at fault than those he sues should not be able to recover against them for damages. This limitation in no way affects the underlying recognition that fault can now be apportioned in any percentage among all the parties.

Section (b) of the Act is more crucial to this case, however, because by its terms it defines a defendant's *liability* as "that proportion of the total dollar amount awarded as damages in ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed." 42 Pa.C.S. § 7102(b).

In my view our comparative negligence statute represents a departure from the prior law on the subject which made all tortfeasors jointly and severally liable for an equal pro tanto proportion of the judgment. *Menarde v. Philadelphia Transportation Co.,* 376 Pa. 497, 103 A.2d 681 (1954); *Gorman v. Charlson,* 287 Pa. 410, 135 A. 250 (1926). If meaning is to be given to the legislature's definition of a defendant's liability, I have no choice but to conclude that joint and several liability, as formerly known to the common law, has been modified to some extent by our comparative negligence statute.

Since a defendant's liability as a matter of law is now defined to be equal only to his percentage of causal negligence, it necessarily follows that the consideration he pays for any settlement against him alone represents a payment for only his percentage of causal negligence, and discharges

his liability to the plaintiff to that extent. The plaintiff may still proceed against any remaining non-settling tortfeasor for the full amount of the verdict less the amount which equals the settling defendant's percentage of causal negligence, that is, his pro-rata share of the damages as fixed by the jury. There is, therefore, no reason to impose on his settlement arrangement the impression that he is paying for anything more than his proportionate share of liability. That being the case, any jury verdict ultimately arrived at will necessarily be reduced by only the settling defendant's calculated monetary percentage of causal negligence or fault, and not by the amount of consideration paid by such settling defendant in the release.

Applying these principals to the case *sub judice*, I agree that Giant Eagle's settlement operated as a release only to the extent of its proportionate share of causal negligence as later determined by the jury. There is no reason to credit Stanley with the $3900.00 Giant Eagle paid in excess of its judicially determined proportionate share of liability and the majority is correct in overruling *Daugherty v. Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956), and in rejecting *Mong v. Hershberger*, 200 Pa.Superior Ct. 68, 186 A.2d 427 (1962). Stanley did not participate in the negotiated settlement between Giant Eagle and Appellant; nor did it choose to settle its liability with Appellant, as did Giant Eagle.

As Mr. Justice Musmanno remarked: "The [Giant Eagle] settlement was purely a voluntary compact between two parties and we have no right to step in between them except to see to it that [Stanley] is not called upon to pay more than (40%) of the jury's verdict. To go further is to intermeddle with the rights of people to settle their own affairs." *Daugherty*, dissent 386 Pa. 367 at p. 381, 126 A.2d 730, at 737 (1956).

To summarize, prior to the Comparative Negligence Act, the portion or percentage of liability of each tortfeasor was as a matter of equity equal in proportion to the number of tortfeasors. Under the comparative negligence statute, the liability of each tortfeasor is fixed by law and depends on a

question of fact determined by an apportionment of the causal negligence attributable to all the tortfeasors. Where a defendant and plaintiff enter into a release, such as the one in this case, the release should operate to satisfy only that percentage of the judgment plaintiff ultimately recovers as the settling tortfeasor's causal negligence bears to all the causal negligence of all the tortfeasors. *Accord,* see *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963).

Here, Giant Eagle's release satisfied that part of its cause of action for which liability was found (60%) to be attributable to it. The remaining negligence (40%) allocated by the jury to Stanley remains to be collected by Appellant.

Stanley's argument that Appellant is receiving a $3900.00 windfall is misplaced and wrongly endorsed by the trial court and Superior Court. Giant Eagle did not condition its payment to Appellant on the basis that if it overpaid its liability it could seek a refund from Appellant. In this regard the terms of the release are controlling. The only party who had a legal right to complain about the amount it paid for the release chose to waive its right of complaint. The release does not transfer any such right to Stanley. Stanley could only complain of windfall if it were being compelled to pay more than its 40% of causal negligence. Such is not the case here.[3]

Nor is this a case which involves contribution. As a matter of Legislative judgment, the right of contribution exists under comparative negligence only where a defendant is compelled to pay more than his proportionate verdict liability. Giant Eagle is not compelled to pay more because it voluntarily settled with Plaintiff, and Stanley is not compelled to pay more than his proportionate share of 40% as fixed by the jury. Neither, then, can seek contribution

**3.** Our decision today awards to the Appellant the benefit of his bargain with Giant Eagle ($22,500.00) and the amount awarded to him by the verdict against Stanley ($12,400.00) for a total of $34,900.00. This is so even though the full verdict was for $31,000.00. For if the settlement with Giant Eagle had been for less than $18,600.00, the Appellant would have borne the loss and received a total recovery of less than the verdict of $31,000.00.

from the other. I agree that the judgment must be vacated so that Appellant can collect the full amount of damages assessed by the jury against Stanley ($12,400.00).

LARSEN, J., joins this concurring opinion.

ZAPPALA, Justice, dissenting.

By the stroke of its pen, the majority today has not only rewritten the Uniform Contribution Among Tortfeasors Act so as to render it meaningless and senseless, it has obliterated the explicit legislated right of contribution which exists among joint tortfeasors pursuant to 42 Pa.C.S. § 8324 and 42 Pa.C.S. § 7102(b).

Concluding that a verdict may be reduced *only* by the proportionate share of the settling tortfeasor, the majority states that "[t]he actual amount of the release, if it exceeds this sum, is of no consequence in the satisfaction of the judgment of the remaining defendants." This analysis is simply incredible. Section 8326 provides that, "[a] release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tortfeasors *in the amount of the consideration paid for the release or* in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid." [Emphasis added]. When the legislature has by unambiguous and concise language established this right under Section 8326, it is not within judicial prerogative to modify the legislative judgment.

The language of § 8326 is identical to its precursor, Section 4 of the Uniform Contribution Among Tortfeasors Act, Act of July 19, 1951, P.L. 1130. Pennsylvania was among those jurisdictions which adopted the text of the 1939 uniform act which bears the same title. *See,* 12 Uniform Laws Annotated, pp. 59, 60. Section 4 of our 1951 Act and 42 Pa.C.S. § 8326 contain the verbatim language of § 4 of the 1939 version of the uniform act.

In *Daugherty v. Hershberger*, 386 Pa. 367, 126 A.2d 730 (1956), this Court analyzed Section 4 of the 1951 Act. We were presented then with the same issue which the Appellant now raises thirty years later. In these thirty years the statutory language has not changed, but, today, the interpretation has.

In *Daugherty*, the plaintiffs brought actions, subsequently consolidated for trial, against defendant Hershberger for injuries sustained in an automobile accident with Hershberger and another driver. Prior to the filing of the actions against Hershberger, the plaintiffs entered into a settlement with the other driver. The executed releases discharged the driver from liability, and provided that the damages recoverable against Hershberger were reduced to the extent of the driver's pro rata share.

Hershberger later joined the other driver as an additional defendant. Verdicts were entered against both Hershberger and the driver totalling $11,720. Under the settlement, the plaintiffs had received $13,500. The consideration paid to plaintiff Daugherty for the release was $5,145.23; the verdict for Daugherty assessed damages at $5,549.49.[1] Because the consideration paid for the release exceeded the driver's pro rata share of 50%, a dispute arose as to the amount of the verdict for which Hershberger was liable.

The plaintiffs claimed that since the releases provided for a pro rata reduction, they were entitled to recover 50% of their verdicts from Hershberger regardless of the amount of the consideration paid by the other driver. Hershberger contended that he should be held liable only for the difference between the consideration paid and the amount of the verdict entered for each of the plaintiffs. We held that the language of Section 4 of the 1951 Act was *wholly unambiguous*, and concluded on review thereof that Hershberger's position was correct.

Section 4 was paraphrased by our Court as follows:

**1.** Unlike plaintiff Daugherty, for several of the plaintiffs, the amount paid by the driver for the releases was greater than the assessment of the individual's damages. As to those plaintiffs, Hershberger requested that the verdicts be discharged altogether.

In other words, if the proportion of reduction provided by the release is greater than the amount of the consideration paid for the release, such proportion of reduction prevails, *but if, on the other hand, the consideration paid for the release is greater than the proportion of reduction provided by the release, then the amount of the consideration paid for the release prevails.*

386 Pa. at 373, 126 A.2d at 733 [Emphasis added].

We acknowledged therein that the Commissioners' note to § 4 of the 1939 uniform act, which became Section 4 of our Act in 1951, had also paraphrased its language by stating that "a release of one tortfeasor will benefit the others by reducing the claim against them in the amount of the consideration paid therefor, or in the amount or proportion by which the release provides that the total claim shall be reduced, whichever is larger." 386 Pa. at 373, 126 A.2d at 733.

The majority now overrules our decision in *Daugherty*, but, understandably, does not explain how the "wholly unambiguous" language of the statute has taken on a new meaning since that decision. Understandably, because there is no rational basis for this sudden shift in our Court's interpretation of the legislative language. Nor is there any logical explanation for its rejection of the Commissioners' statement of what was accomplished by the 1939 uniform act, which our legislature adopted. What does underlie this about-face is the majority's sentiment that only its interpretation would favor settlements and that this should be encouraged as a policy matter. To support its interpretation, the majority creates the specter of a failing judicial system which undermines settlement as a method of dispute resolution. This is disingenuous, as this Court's interpretation in *Daugherty*, which the majority now rejects, has not crippled settlement of cases during the 30 years since it was decided.

Whatever its merit, however, the majority's view of which is the best method of encouraging settlements in cases involving multiple defendants is of no consequence when

the statutory language states otherwise. The judiciary's function is to apply the law as it is stated, not to restate it to conform with its own beliefs. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b).

Section 8326 is phrased in the alternative. The statute provides that a claim against a non-settling tortfeasor is reduced "in the amount of the consideration paid" *or* "in any amount or proportion by which the release provides . . . if greater than the consideration paid." The larger of the two figures is the amount by which the claim is reduced. The amount of consideration paid is discernible from the release itself, while "proportion" would be determined by the factfinder.

By its holding, the majority has excised that provision of § 8326 which refers to the consideration paid. It has determined that the provision is no longer necessary, and that reducing the claim by the calculated proportion will suffice. The majority's judicial judgment of the amount by which a release will be reduced has been substituted for the legislature's judgment. This is improper. The legislature clearly intended that the greater amount of the *two* figures would reduce the claim, whether it be the consideration paid *or* the proportionate share.

Because the unambiguous language of § 8326 has remained unchanged since *Daugherty,* so should our interpretation. Even if the majority thinks that § 8326 has somehow become "ambiguous" with the passage of time, its analysis violates the rules of statutory construction. "In ascertaining the intention of the General Assembly in the enactment of a statute, the following presumptions, among others, may be used: (4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4).

.

Attempting to bolster its analysis, the majority cites cases from the highest courts in New Jersey, Texas, and Colorado. Unlike Pennsylvania, however, neither New Jersey nor Texas has adopted the statutory language of § 4 of the 1939 Uniform Contribution Among Tortfeasors Act as recommended by the national commission. Texas is among those states which has not adopted the uniform act in any form. New Jersey, which enacted legislation involving contribution among tortfeasors, did not adopt the act recommended by the national commission. New Jersey's legislation does not expressly deal with the effect of a settlement on the right to contribution. Unless the legislative language of § 8326 is to be ignored completely, the case law of states such as New Jersey and Texas, which have not adopted similar language, is of no import. Ironically, recognizing the statutory differences, the New Jersey Superior Court has stated that generally foreign precedent would be inapposite in interpreting its statute. *Tefft v. Tefft*, 192 N.J.Super. 561, 471 A.2d 790 (1983).

Of the three jurisdictions, only Colorado had adopted a statutory provision comparable to 42 Pa.C.S. § 8326. The majority attempts to rely upon the Colorado Supreme Court's decision in *Kussman v. City and County of Denver*, 706 P.2d 776 (Colo.1985) to support its holding that the non-settling tortfeasor is liable for his full proportionate share. This reliance is misplaced because in *Perlmutter v. Blessing*, 706 P.2d 772 (Colo.1985) and *Greenemeier v. Spencer*, 719 P.2d 710 (Colo.1986), the Colorado Supreme Court interpreted its own statutory language governing the effect of a release in the same way this Court did in *Daugherty*.[2] Thus, while the majority quotes from the

---

**2.** Subsequent to the time the Colorado Supreme Court handed down its decisions in these cases, the statute was amended by the legislature. The statute which became effective July 1, 1986, now provides that the claim against the non-settling tortfeasors is reduced "to the extent of any degree or percentage of fault or negligence attributable by the finder of fact." 6 C.R.S. § 13–50.5–105(1)(a). There, it was the Colorado legislature which rewrote the language of its statute. Here, it is the majority which usurps the legislature's authority and redrafts the Pennsylvania statute.

Colorado Court's decision in *Kussman,* the Colorado Supreme Court itself has unequivocally rejected the majority's interpretation.

The majority's error is made in the first instance because it quotes an excerpt from the *Kussman* decision without regard to the issue raised therein. In *Kussman,* the plaintiff was injured while a passenger in a van which she owned. The van collided with a fire truck owned by the city of Denver. In the plaintiff's action against the city, the city claimed that the operator of the van was solely liable for the injuries, and that the operator's negligence should be imputed to the plaintiff in order to defeat her claim. The city also joined the operator as a third-party defendant. During trial, the plaintiff gave the operator a covenant not to sue in exchange for a payment of $35,000. The jury found that the city was 51% negligent and the operator, 49%. Under Colorado law, the jury also imputed the operator's negligence to the plaintiff as the owner of the van. The damages were determined to be $153,037. Because the plaintiff was found 49% at fault due to the imputed negligence, judgment was entered against the city for 51% of the total damages, or $78,048.

The city filed a motion to amend the judgment, contending that it was entitled to offset the $78,048 judgment with the operator's $35,000 settlement with the plaintiff. The motion was denied. The issue raised before the Colorado Supreme Court was whether the operator and the city were "liable in tort for the same injury", i.e. joint tortfeasors, which would permit the city to set off the $35,000 settlement from its liability. The court held that they were not joint tortfeasors and as a result could not offset the judgment with the settlement, stating:

> Here, the city, taking advantage of the comparative negligence law, section 13–21–111, defended itself by imputing [the operator's] negligence to the plaintiff; as a result, the liability for the plaintiff's injury was divided into two independent components: the city's liability and the plaintiff's liability. Once the liability was divided according to

fault and judgment rendered against the city for no more than its independent portion of the liability to the plaintiff, the predicate for contribution—a joint or several liability for the entire damages resulting from the plaintiff's injury—was erased.

706 P.2d at 780.

Unlike the instant case, the damages assessed by the jury against the city in *Kussman* could not be reduced by the amount of consideration paid for the covenant not to sue because the city and the operator were not joint tortfeasors.

The majority has also apparently overlooked the Colorado Supreme Court's decision in *Perlmutter*, which was handed down on the same day as *Kussman*. In *Perlmutter*, the Colorado court reviewed § 13–50.5–105 of its Uniform Contribution Among Tortfeasors Act, § 13–50.5–101 to –106, 6 C.R.S., which provided for the set-off of settlement funds paid by one tortfeasor from the claim against other tortfeasors jointly or severally liable for the same injury.

Section 13–50.5–105 provided:

(1) When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

(b) It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

The Colorado Supreme Court also found this language to be unambiguous. As we had in *Daugherty*, the court stated that subsection (a) of this statute meant that, "Where the only injuries involved in an action are those for which all tortfeasors are jointly or severally liable, the application of this section is clear: *either the settlement amount or the amount provided for in the settlement document, which-*

*ever is greater, must be deducted from the total judgment against the remaining tortfeasors."* 706 P.2d at 775 [Emphasis added].[3]

Finally, in *Greenemeier,* the Colorado Supreme Court was squarely faced with the factual circumstances presented by the instant case. The plaintiffs brought a suit against two minors and their parents for injuries sustained when one of the plaintiffs was struck by a pellet from a BB gun fired by the minors. Before trial, the plaintiffs reached a settlement of $100,000 with one of the minors and his parents. The jury returned a verdict against the minor who had not settled in the amount of $8,000 to one plaintiff, and of $51,000 to the other plaintiff. Of the $51,000, the sum of $1,000 was for exemplary damages. Upon the defendant's motion, the trial court reduced the two compensatory damage awards to zero. The trial court held that § 13–50.5–105 required that the amount of compensatory damages received by the plaintiffs at trial be reduced by the amount of settlement they had received from the settling tortfeasor prior to trial.

The Colorado Supreme Court affirmed, reiterating its analysis in *Perlmutter:*

> In *Perlmutter v. Blessing,* 706 P.2d 772, 775 (Colo.1985), we noted that where, as in the present case, "the only injuries involved in an action are those for which all tortfeasors are jointly or severally liable, the application of [section 13–50.5–105(1)(a) ] is clear: either the settlement amount or the amount provided for in the settlement document, whichever is greater, must be deducted from the total judgment against the remaining tortfeasors." This type of reduction was recognized in Colorado even before our legislature adopted the Act in 1977. See *Cox v. Pearl Investment Co.,* 168 Colo. 67, 74, 450

**3.** It should be noted that the Colorado statute differed from § 8326 of the Pennsylvania statute in one respect. The Colorado statute reduced the claim against the non-settling tortfeasors by the amount of the consideration or the amount provided for in the release, whichever is greater. Section 8326 provides that the claim will be reduced by the amount of consideration, or in the amount *or proportion* stated in the release.

P.2d 60, 63 (1969) (noting that in order to avoid overcompensating a plaintiff, a nonsettling defendant is entitled to have the amount of the judgment against him reduced by the amount paid in settlement).

719 P.2d at 713.

In *Daugherty*, we recognized that at common law a release of one tortfeasor necessarily worked a release of all others, irrespective of the parties' intent. The 1951 Act altered the effect of a release as to other tortfeasors. It enabled an individual to settle with one joint tortfeasor and still have recourse to the remaining tortfeasors, subject to the limitations set forth in the Act.

The 1951 Act provided also for a right to contribution among joint tortfeasors, which was reenacted in 1976 as part of the current Uniform Contribution Among Tortfeasors Act. A tortfeasor who has paid more than his pro rata share of the common liability is entitled to contribution. The amount of contribution is calculated by reference to the percentage of negligence attributable to that tortfeasor. For purposes of contribution only, negligence was apportioned previously among tortfeasors in equal shares—i.e. 50% if two, 33⅓% if three, etc. A plaintiff's right to recovery has never been limited by such an apportionment of negligence among tortfeasors.

In the past, the only factor which affected the plaintiff's right to recovery was the plaintiff's own negligence. The adoption of a comparative negligence statute, 42 Pa.C.S. § 7102, eliminated contributory negligence of a plaintiff as a bar to recovery where such negligence is not greater than that of the defendant.

It is not true as has been suggested, however, that the refinement in determining the proportionate . share of a defendant's negligence under the comparative negligence statute has invalidated the legislative language in 42 Pa. C.S. § 8326 relating to the amount of the consideration paid for the release. Nor is it necessary to speculate as to the effect of the comparative negligence statute on a defendant's right to contribution. The statute itself is specific,

"The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is compelled to pay more than his percentage share may seek contribution." 42 Pa.C.S. § 7102(b).

In other words, the comparative negligence statute simply altered the *method* for determining the amount of contribution which a defendant may seek. Rather than calculating the pro rata share of liability by dividing 100% by the number of defendants, the factfinder's assessment of the pro rata share controls. Under the comparative negligence statute, contribution is based upon the comparative fault of the tortfeasors. This is sometimes referred to as "comparative contribution." *See*, Restatement, Second, Torts § 885.

Not only has the majority redrafted the statute, it has ignored the consequences of its holding. First, it has rendered invalid any right to contribution by a settling tortfeasor who has paid more than his percentage share. If the non-settling tortfeasor is required to pay all of his percentage share to the plaintiff, he cannot be required to pay contribution to the settling tortfeasor. Previously, the non-settling tortfeasor was required to compensate the settling tortfeasor for the amount by which the plaintiff's claim had been reduced due to the release. *Mong v. Hershberger*, 200 Pa.Super. 68, 186 A.2d 427 (1962).

The following examples illustrate that the majority's analysis contravenes the stated legislative intent that there exist a right of contribution among joint tortfeasors. 42 Pa.C.S. § 8324. Each of the examples assumes that A is the settling tortfeasor and that a jury has awarded $100,000 in damages. The first set of examples states the Plaintiff's total recovery under the majority's analysis. It is notable that in not one of the following instances would A, the settling tortfeasor, have a right to contribution.

| Proportionate share of damages assessed against A | Proportionate share of damages assessed against B | Amount of consideration paid by A for the release | Amount paid by B to Plaintiff | Plaintiff's total recovery |
|---|---|---|---|---|
| Example (1)   0% | 100% | $ 30,000 | $100,000 | $130,000 |
| Example (2) 70% | 30% | $ 30,000 | $ 30,000 | $ 60,000 |
| Example (3) 30% | 70% | $ 30,000 | $ 70,000 | $100,000 |
| Example (4) 20% | 80% | $ 30,000 | $ 80,000 | $110,000 |
| Example (5) 30% | 70% | $110,000 | $ 70,000 | $180,000 |

Under the *Daugherty* analysis, which would require the verdict to be reduced by A's proportionate share or the amount of consideration paid for the release, whichever is greater, the same five examples would result in the following:

| Proportionate share of damages assessed against A | Proportionate share of damages assessed against B | Amount of consideration paid by A for the release | Amount paid by B to Plaintiff | Plaintiff's total recovery |
|---|---|---|---|---|
| Example (1)   0% | 100% | $ 30,000 | $100,000 | $130,000 |
| Example (2) 70% | 30% | $ 30,000 | $ 30,000 | $ 60,000 |
| Example (3) 30% | 70% | $ 30,000 | $ 70,000 | $100,000 |
| Example (4) 20% | 80% | $ 30,000 | $ 70,000 | $100,000 |
| Example (5) 30% | 70% | $110,000 | $   0 | $110,000 |

As can be seen by comparison of the charts, the first three examples will result in the same total recovery for the plaintiff and the same distribution of payments among defendants under either analysis. The fundamental differences between the majority's view and my view are demonstrated by Examples (4) and (5). In those instances, the majority totally disregards the amount of consideration paid for the release by A and requires B to pay the plaintiff the total amount of damages represented by his proportionate share. As a result, A could never seek contribution from B although A had paid more for the release than his proportionate share of damages.

The language of § 8326 and the *Daugherty* analysis, however, that the claim against the other tortfeasors would be reduced in the amount of consideration paid for the

release *or* the amount or proportion by which the release provides if greater than the consideration paid, alter the result in Examples (4) and (5). In Example (4), the greater of those two amounts is $30,000—the amount paid for the release. Thus, in reducing the plaintiff's recovery by $30,-000, B would be required to pay the plaintiff the sum of $70,000. The plaintiff would receive the total damages which he suffered of $100,000, while A could recover $10,-000 from B by exercising his right to contribution. B would then be obligated to pay a total sum of $80,000—which represents his proportionate share of damages of 80%.

In Example (5), the greater of the two amounts is $110,-000—again, the amount of the release. The plaintiff's recovery would be reduced by $110,000, and B would not be required to pay any amount to the plaintiff. The plaintiff would receive $10,000 in excess of the total damages due to the favorable settlement, while A could recover $70,000 from B by exercising his right to contribution. Once again, B would then be obligated to pay the amount which represents his proportionate share of damages of 70%.

It is only under the holding which the majority enunciates can a plaintiff recover more than the fair compensation for his injuries fixed by a jury's verdict or trial judge's determination of damages. Under our prior case law, a plaintiff would recover 100% of his damages. Now, under the majority analysis, the plaintiff may recover *more* than the fair value of his damages, and have more than one satisfaction for the same injury.

The majority contends that a settling tortfeasor would receive a "windfall" by way of contribution. Although the right to contribution is a benefit to a settling tortfeasor when the settling tortfeasor's payment satisfies more than his proportional share of the obligation to the plaintiff, it is by no means a windfall. Both the settling and the non-settling tortfeasor will have paid his respective proportional share of liability. The non-settling tortfeasor will do so in part by satisfying his obligation to pay contribution. What the majority has termed a windfall is in fact a statutory

*right* to contribution. If the majority disapproves of the right to contribution among joint tortfeasors, its quarrel is with the legislature.

In the instant case, the amount of the consideration paid for the release by Appellee Giant Eagle was $22,500. The jury determined that the proportion of damages attributable to Giant Eagle's negligence was 60% of $31,000 or $18,600. The greater of the two amounts was the consideration of $22,500. I would affirm the holding of the lower courts and find that the Appellant's claim against Appellee Stanley Door was properly reduced by $22,500. Giant Eagle would be entitled then to seek contribution from Stanley Door in the amount of $3,900—i.e., $22,500 less $18,600.